1  Tyler C. Gerking (State Bar No. 222088)
   tgerking@fbm.com
2  Karen P. Kimmey (State Bar No. 173284)
   kkimmey@fbm.com
3  Janice W. Reicher (State Bar No. 287591)
   jreicher@fbm.com
4  Jennifer M. Bentley (State Bar No. 329438)
   jbentley@fbm.com
5  Farella Braun + Martel LLP
   235 Montgomery Street, 17th Floor
6  San Francisco, California 94104
   Telephone: (415) 954-4400
7  Facsimile: (415) 954-4480

8  Attorneys for Jackson Family Wines, Inc.

9

10                     UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13

14  JACKSON FAMILY WINES, INC.,            Case No. _____

15                  Plaintiff,             **COMPLAINT FOR:**

16          vs.                            **1. BREACH OF CONTRACT;**
                                           **2. BREACH OF IMPLIED COVENANT**
17  ZURICH AMERICAN INSURANCE                 **OF GOOD FAITH AND FAIR**
    COMPANY,                                  **DEALING;**
18                                         **3. DECLARATORY RELIEF**
                    Defendant.
19                                         **DEMAND FOR JURY TRIAL**

20

21        Plaintiff Jackson Family Wines, Inc. ("JFW") alleges as follows:

22                      **I.    INTRODUCTION**

23        1.      This lawsuit arises out of the flagrant refusal of Zurich American Insurance

24  Company ("Zurich") to pay JFW's valid and substantiated insurance claims resulting from four

25  devastating California wildfires.  JFW purchased three insurance policies from Zurich, which

26  provided $400 million in coverage for each of the 2017-18 and 2018-19 policy terms and $300

27  million for the 2019-20 policy term, for a total of $1.1 billion in coverage limits to protect JFW

28  against "[a]ll risks of direct physical loss of or damage from any cause unless excluded."  JFW

1  suffered substantial property and other damage from four wildfires that occurred in the three

2  different policy terms:  the Pocket Fire and the Nuns/Tubbs Fire in 2017, the Kincade Fire in

3  2019, and the Glass Fire in 2020 (the "four open fire claims").  JFW has submitted claims arising

4  from the four wildfires to Zurich, and the four open fire claims collectively total in excess of $430

5  million in losses.

6       2.    Zurich has engaged in a deliberate campaign to delay the four open fire claims and

7  avoid paying tens of millions of dollars in coverage that is clearly owed under the three insurance

8  policies that JFW purchased.  Zurich has buried JFW in requests for information and documents

9  (much of which Zurich already possessed), subjected JFW employees to examinations under oath,

10  promised to provide JFW responses and never sent them, repeatedly ignored JFW's

11  correspondence requesting approvals and payments, failed to communicate its decisions or

12  positions as to the existence of coverage for the purpose of delaying payment, only recently denied

13  coverage for covered aspects of the four open claims, reversed coverage positions without any

14  reasonable basis for doing so in order to wrongfully withhold policy benefits, withheld and refused

15  to make payments of tens of millions of dollars that were admittedly due, and taken every

16  opportunity to delay payment.  To date, Zurich has paid less than $70 million total on the four

17  open fire claims combined.

18       3.    JFW brings this action against Zurich for damages and other relief based on

19  Zurich's breaches of contract and the implied covenant of good faith and fair dealing.  JFW seeks

20  an order declaring that Zurich has breached its contracts with JFW, violated its implied covenant

21  of good faith and fair dealing, engaged in bad faith claims handling practices, and must pay

22  damages in an amount to be proven at trial, plus attorney's fees, interest, and costs.  JFW also

23  seeks an award of punitive damages for Zurich's malicious conduct.  Zurich engaged in the

24  wrongful conduct described herein with "oppression, fraud, or malice" within the meaning of

25  California Civil Code § 3294, with the aim and intention to wrongfully deprive JFW of the

26  contractual benefits for which it had bargained and paid.

     **II.**    <u>**THE PARTIES**</u>

28       4.    JFW is a closely held corporation consisting of JFW and its affiliated entities, with

1   its principal place of business in Santa Rosa, California.

2       5.      JFW is informed and believes, and on that basis alleges, that Zurich is a New York

3   corporation with its principal place of business in Illinois.

4                   **III.      JURISDICTION AND VENUE**

5       6.      JFW incorporates the foregoing allegations herein by reference.

6       7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), in

7   that the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs as

8   between citizens of different states.

9       8.      Zurich is subject to personal jurisdiction in this Court because it maintains places of

10  business in the State of California, transacts business in California, and/or has entered into

11  contracts with JFW to be performed in California.

12      9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a

13  substantial part of the events or omissions giving rise to this claim occurred in Sonoma County,

14  California.

15                  **IV.      FACTUAL BACKGROUND**

16  **A.      Jackson Family Wines**

17      10.     JFW is a family-owned business that owns and operates dozens of vineyards and

18  wineries throughout California, with a large presence in Napa and Sonoma Counties.  JFW also

19  has facilities in Oregon, Australia, Chile, France, Italy, and South Africa.

20      11.     JFW operates its vineyards and wineries on property that it owns or leases.  JFW's

21  properties consist of vineyards, homes, outbuildings, commercial facilities, and forest land.  At

22  issue here are JFW's properties in Napa and Sonoma Counties, which cover more than 15,000

23  acres.

24  **B.      The Insurance Policies**

25      12.     Zurich sold JFW a Property Insurance Policy bearing number PPR0184974-02 for

26  the period of October 1, 2017 to October 1, 2018 (the "2017 Policy") with $400,000,000 in

27  coverage limits.

28      13.     Zurich sold JFW a Property Insurance Policy bearing number PPR0184974-03 for

the period of October 1, 2018 to October 31, 2019 (the "2018 Policy") with $400,000,000 in coverage limits.

14.     Zurich sold JFW a Property Insurance Policy bearing number PPR0184974-04 for the period of October 31, 2019 to October 31, 2020 (the "2019 Policy") with $300,000,000 in coverage limits.

15.     The 2017 Policy, 2018 Policy, and 2019 Policy (collectively, the "Policies") each promise to insure JFW against "All risks of direct physical loss of or damage from any cause unless excluded."

16.     JFW, any subsidiary of JFW, and JFW's interest in any partnership, joint venture or other legal entity which JFW has management control or ownership is a "First Named Insured" under the Policy.

17.     The Policy insures JFW against direct physical loss of or damage caused by a "Covered Cause of Loss" to Covered Property, at an Insured Location.

**C.     The 2017 Wildfires**

18.     On October 8, 2017, the Nuns/Tubbs Fire started in Napa County.  The Nuns/Tubbs Fire spread to Sonoma County and burned for weeks.  Ultimately, the Nuns/Tubbs Fire burned more than 50,000 acres, killed 40 people, and destroyed more than 6,000 homes.

19.     As a result of the Nuns/Tubbs Fire, JFW sustained losses at twelve locations.  JFW lost thirteen structures, numerous pieces of equipment, and business personal property.  JFW also sustained damage to its infrastructure such as fences, trellises, roads, and irrigation equipment.  In addition, hundreds of naturally occurring trees on JFW's property were damaged or destroyed by the Nuns/Tubbs Fire and either fell onto roads, buildings, or infrastructure, or threatened to do so.

20.     JFW spent more than $1.7 million to remove fire debris from its property following the Nuns/Tubbs Fire and still has at least $8 million in additional debris removal work to perform to remove fire-damaged trees.

21.     As a result of the Nuns/Tubbs Fire, JFW suffered a loss of "Gross Earnings" because (a) civil authority, loss of power, and road closures/obstructions prevented JFW from operating its direct-to-consumer sales for a few weeks; and (b) civil authority and road closures/

obstructions prevented JFW and its employees from accessing its vineyards to harvest some grapes at their optimal ripeness, resulting in 23,318 cases of wine that was not marketable under JFW's labels.

22.     On October 9, 2017, the Pocket Fire started in Sonoma County.  The Pocket Fire burned for weeks and spread to more than 17,000 acres.

23.     On October 9, 2017, pursuant to Government Code section 8558, Governor Edmund G. Brown Jr. issued an emergency proclamation for Napa and Sonoma counties due to the multiple wildfires burning, including the Nuns/Tubbs and Pocket Fires.

24.     As a result of the Pocket Fire, JFW sustained losses at two locations.  JFW lost numerous pieces of equipment and business personal property.  JFW also sustained damage to its infrastructure such as fences, trellises, roads, and irrigation equipment.  In addition, hundreds of naturally occurring trees which grew on JFW's property were damaged or destroyed by the Pocket Fire and either fell onto roads, buildings, or infrastructure, or threatened to.

25.     As a result of the Pocket Fire, JFW suffered a loss of "Gross Earnings" because (a) civil authority, loss of power, and road closures/obstructions ceased some of its direct-to-consumer sales for a few weeks; and (b) civil authority and road closures/obstructions prevented JFW and its employees from accessing its vineyards to harvest some grapes at their optimal ripeness, resulting in 65,191 cases of wine that was not marketable under JFW's labels.

**D.     The Kincade Fire**

26.     On October 23, 2019, the Kincade Fire started in Sonoma County.  The Kincade Fire burned for 13 days and spread to more than 77,000 acres.

27.     On October 25, 2019, pursuant to Government Code section 8558, Governor Gavin Newsom issued an emergency proclamation for Sonoma County due to the Kincade fire.

28.     As a result of the Kincade Fire, JFW sustained losses at no fewer than ten locations.  JFW lost more than 50 structures, many of which were residential homes, and numerous pieces of equipment and business personal property.  JFW also sustained damage to its infrastructure such as fences, trellises, roads, and irrigation equipment.  In addition, thousands of naturally occurring trees which grew on JFW's property were damaged or destroyed by the Kincade Fire and either

1    fell onto roads, buildings, or infrastructure, or threatened to.

2        29.    JFW spent more than $12 million to remove fire debris from its property following

3    the Kincade Fire and still has at least $26 million in additional debris removal work to perform to

4    remove fire-damaged trees.

5        30.    As a result of the Kincade Fire, JFW suffered a loss of "Gross Earnings" because

6    civil authority, loss of power, and road closures/obstructions ceased some of its direct-to-

7    consumer sales for a few weeks.

8    **E.     The Glass Fire**

9        31.    On September 27, 2020, the Glass Fire started in Napa County then spread to

10   Sonoma County and burned for weeks.  The Glass Fired burned more than 67,000 acres and

11   destroyed more than 1,500 structures.

12       32.    On September 28, 2020, pursuant to Government Code section 8558, Governor

13   Gavin Newsom issued an emergency proclamation for Napa County due to the Glass Fire.

14       33.    As a result of the Glass Fire, JFW sustained losses at no fewer than five locations.

15   Thanks to the efforts of JFW's own fire suppression team and a private fire suppression contractor

16   hired by JFW, JFW lost only one structure, which was a residence.  However, JFW still lost

17   equipment and business personal property.  JFW also sustained damage to its infrastructure such

18   as fences, trellises, roads, and irrigation equipment.  In addition, hundreds of naturally occurring

19   trees which grew on JFW's property were damaged or destroyed by the Glass Fire and either fell

20   onto roads, buildings, or infrastructure, or threatened to.

21       34.    JFW spent more than $1.5 million to remove fire debris from its property following

22   the Glass Fire and still has additional debris removal work to perform to remove fire-damaged

23   trees.

24       35.    As a result of the Glass Fire, JFW suffered a loss of "Gross Earnings" because (a)

25   civil authority, loss of power, and road closures/obstructions ceased some of its direct-to-

26   consumer sales for a few weeks; and (b) civil authority and road closures/obstructions prevented

27   JFW and its employees from accessing its vineyards to harvest some grapes at their optimal

28   ripeness, resulting in thousands of cases of wine that was not marketable under JFW's labels.

**F.     Zurich's Handling of the Claims**

36.     JFW provided notice of the Nuns/Tubbs Fire and the Pocket Fire to Zurich through its agent, Alliant Insurance Services, Inc. ("Alliant").  Zurich assigned the 2017 Wildfires two separate claim numbers (5630012285 and 5630014304), one for the Nuns/Tubbs Fire and another for the Pocket Fire, and assigned them to the same claim adjuster.  JFW, Alliant, and Zurich commonly referred to the Nuns/Tubbs Fire, the Pocket Fire, and the two claims in written correspondence as the "2017 Wildfires".

37.     JFW provided notice of the Kincade Fire to Zurich through Alliant.  Zurich assigned the Kincade Fire Claim number 5630042153 and assigned it to the same claim adjuster who was adjusting the 2017 Wildfires.

38.     JFW provided notice of the Glass Fire to Zurich through Alliant.  Zurich assigned the Glass Fire Claim number 5630059011 and assigned it to the same claim adjuster who was adjusting the 2017 Wildfires and the Kincade Fire.

**i.     Zurich's Continuing Investigation of the Four Open Fire Claims**

**a.     Zurich's Payment for JFW's 2017 Wildfire Losses**

39.     For five years, Zurich has been investigating and adjusting JFW's claim for the Nuns/Tubbs Fire.  To date, JFW has submitted invoices and proposals for the Nuns/Tubbs Fire totaling more than $110 million, but Zurich has issued payments totaling only $9,468,545.94.

40.     For five years, Zurich has been investigating and adjusting JFW's claim for the Pocket Fire.  To date, JFW has submitted invoices and proposals for the Pocket Fire totaling more than $46 million, but Zurich has issued payments totaling only $2,569,953.85.

**b.     Zurich's Payments for JFW's Kincade Fire Losses**

41.     For three years, Zurich has been investigating and adjusting JFW's claim for the Kincade Fire.  To date, JFW has submitted invoices and proposals for the Kincade Fire totaling more than $288 million, but Zurich has issued payments totaling only $56,352,007.

42.     On December 10, 2019, August 4, 2020, November 6, 2020, and February 1, 2022, Zurich made payments to JFW for the Kincade Fire in various amounts, totaling $30,067,072.

43.     In a letter dated March 18, 2022, Zurich wrote:  "We are pleased to transmit

1   payment in the amount $26,352,007.  The payment represents our undisputed assessment of

2   structural repairs and land improvements with consideration of policy limits.  The payment also

3   includes the deduction of prior payments.  In addition, your policy deductible of $500,000 was

4   subtracted from the total of the loss and thus absorbed."

5       44.     Attached to the March 18, 2022 email was Zurich's Statement of Loss for the

6   Kincade Fire, which stated that Zurich's "Proposed ACV Cost" for "Structure" is $56,419,079.00,

7   less $500,000 for JFW's deductible.

8                   **c.      Zurich's Payment for JFW's Glass Fire Losses**

9       45.     For two years, Zurich investigated and adjusted JFW's claim for the Glass Fire.  To

10  date, JFW has submitted invoices and proposals for the Glass Fire totaling more than $15 million,

11  but Zurich has issued payments totaling only $1,491,102.94.

12      46.     On March 18, 2022, Zurich wrote in an email to JFW related to the Glass Fire

13  claim that "[p]ayment was placed into process yesterday and will arrive expedited mail early next

14  week."

15      47.     Attached to the March 18, 2022 email was Zurich's Statement of Loss for the Glass

16  Fire, which stated that Zurich's "Proposed ACV Cost" for "Structure" and "Contents" is

17  $2,491,102.94, less $1,000,000 for JFW's deductible.

18                  **d.      Zurich's Failures to Respond to JFW's Correspondence**

19      48.     Since approximately July 2021, Zurich has ignored correspondence from JFW and

20  Alliant relating to the four open fire claims seeking (i) reimbursement for invoices; (ii) approval of

21  proposals for additional work; and (iii) information about the status of JFW's claims for all four

22  open fire claims.

23      49.     The following examples of correspondence that Zurich ignored are representative,

24  not exhaustive:

25      50.     On August 31, 2021 and again on April 19, 2022, JFW emailed Zurich with

26  receipts substantiating the replacement cost for equipment lost in the Nuns/Tubbs Fire and seeking

27  reimbursement for the difference between Zurich's actual cash value payments and replacement

28  cost.  As of the date of this complaint, Zurich has not responded to JFW.

51.     On September 1, 2021, JFW had a telephone conference with Zurich's claim adjustor and Zurich's consultant Richard Norman, in which Zurich instructed Richard Norman to move various items on Norman's Nuns/Tubbs Fire claim tracker spreadsheet to the "substantiated" column, meaning that Zurich agreed these items were covered.  These items included the costs incurred to (1) rent and operate water trucks after JFW's irrigation system was damaged, (2) replace a fire pump, (3) purchase respirators for JFW employees to safely return to work, (4) replace a damaged retaining wall, (5) estimate the replacement cost for burned structures, and (6) control erosion in order to preserve and protect covered property.  While Zurich has asserted that it has been investigating, Zurich has not made a payment for the Nuns/Tubbs Fire since October 20, 2020, and still has not reimbursed JFW for the expenses it verbally agreed were covered on September 1, 2021.

52.     On October 18, 2021 and again on March 2, 2022, JFW emailed Zurich to request a copy of the "Enservio contents tracker," which was Zurich's summary of business personal property lost by JFW in the Glass Fire.  When Zurich failed to provide JFW with a copy, Alliant emailed Zurich on March 9, 2022.  Alliant wrote:  "[P]ursuant to Section 2071(a), Zurich was required to provide the Enservio report within 15 calendar days after receiving JFW's request. . . . Suffice it to say, the 15-day period has lapsed many times over since the request that was made 142 days ago on October 18, 2021."  On March 23, 2022, Zurich finally provided JFW with a copy of the Enservio contents report.

53.     On October 18, 2021, March 11, 2022, April 13, 2022, and April 27, 2022, JFW emailed Zurich to request a copy of the "claim tracker" prepared by Zurich's consultant Richard Norman for the Glass Fire, which was Zurich's summary of proposals for repairs or replacement of JFW's property.  When Zurich failed to provide JFW with a copy of the claim tracker prepared by Richard Norman for the Glass Fire, Alliant emailed Zurich on March 15, 2022, March 29, 2022, and April 12, 2022 to request the claim tracker on JFW's behalf.  On April 28, 2022, Zurich provided a copy of the claim tracker – more than six months after it was first requested.

54.     On March 10, 2022 and again on April 18, 2022, JFW emailed Zurich requesting approval for debris removal work at its Arrowood, Mt. Veeder, Remick Ridge, WBR, Coyote,

1   Nicholas/Haarstad, and Matanzas Creek locations related to the Nuns/Tubbs Fire.  On October 19,

2   2022, JFW forwarded the email to Zurich again and included photographs of the trees damaged or

3   destroyed by fire, some of which had fallen onto JFW's fences.

4         55.      On September 20, 2021 and April 13, 2022, JFW emailed Zurich regarding

5   $611,905 in professional fees JFW incurred in connection with the rebuilding of structures

6   damaged by the Nuns/Tubbs Fire.  As of the date of this complaint, Zurich has not responded to

7   JFW.

8         56.      On April 7, 2022, Zurich emailed JFW a "List of Unnamed Locations" for the

9   Kincade Fire claim, which was prepared by Zurich's consultant JS Held.  Zurich wrote in the letter

10  accompanying the List of Unnamed Locations:  "Please note that with respect to the attached

11  'Summary of Structures-Total by Location' and the 'List of Unnamed Locations' prepared by J.S.

12  Held . . . these electronic spreadsheets are generally considered to be a "work in progress", in that

13  these documents are subject to frequent additions, corrections and updating as Zurich's

14  investigation and adjustment activities progress. . . .  Decisions as to coverage are strictly reserved

15  to Zurich, and such decisions are not reflected on any of the attached responsive documents."

16        57.      On April 12, 2022, JFW emailed Zurich to request payment for its unpaid invoices

17  related to the Kincade Fire claim.  JFW wrote:  "Thank you for your recent payment for the Actual

18  Cash Value (ACV) for structures destroyed in the 2019 Kincade Fire. . . .  We now need to obtain

19  payment for our other expenses that Cyndee Franklin and Zurich have previously approved.

20  These include Contents, Debris Removal, Professional Fees, Extra Expenses, etc.  We've

21  submitted in excess of $26,000,000 over the last two and half years."

22        58.      On April 21, 2022, JFW emailed Zurich with receipts substantiating the

23  replacement cost for a fire pump at its Arrowood location, which was damaged in the Nuns/Tubbs

24  Fire.  In the email, JFW stated that it sought reimbursement for the difference between Zurich's

25  actual cash value payment and the replacement cost.  As of the date of this complaint, Zurich has

26  not responded to JFW.

27        59.      On April 21, 2022, JFW emailed Zurich with receipts substantiating additional

28  expenses incurred by JFW for water truck rentals at its Arrowood location, after the irrigation

1  system was damaged in the Nuns/Tubbs Fire.  As of the date of this complaint, Zurich has not

2  responded to JFW.

3          60.     On April 25, 2022, JFW emailed Zurich again to request payment for its unpaid

4  invoices related to the Kincade Fire claim.  JFW wrote:  "[W]e've submitted $26,001,081.94 thus

5  far on this claim.  Please forward payment to reimburse us for the ~$26M we have paid to date.  In

6  the meantime, we will both stop current work (i.e. it will cost more) and we will add the ongoing

7  interest to borrow $26M over 2-1/2 years to our claim."  As of the date of this complaint, Zurich

8  has not responded to JFW.

9          61.     On April 27, 2022, JFW emailed Zurich with a proposal to repair vineyard roads

10 that were damaged as a result of necessary debris removal work after the Glass Fire, a map

11 showing the proposed work area, and a photo of the damage.  JFW wrote:  "These are hazards for

12 our vineyard workers and especially for their tractor turn around through the vineyard rows (see

13 attached photo). . . .  Please either confirm so we can proceed with this work or provide

14 information on where this lacks coverage.  If we don't hear from you within the next week, we

15 will assume coverage and proceed with the work."

16         62.     On April 27, 2022, Zurich wrote in an email to JFW:  "Zurich is in receipt of

17 numerous emails from you today and over the last several days.  We are also addressing topics

18 which are almost always consistent with your inquiries with [Alliant] multiple times per week."

19         63.     On May 18, 2022, JFW emailed Zurich with three photos of fire-damaged trees that

20 had fallen on fencing as a result of the Kincade Fire.  JFW wrote:  "As we previously indicated,

21 we've stopped debris removal work on our 2019 Kincade Fire claim pending Zurich paying for the

22 $26M+ work approved and performed thus far.  Note that we continue to experience damage

23 caused by debris from the fire falling on to and damaging our covered property."  As of the date of

24 this complaint, Zurich has not responded to JFW.

25         64.     On June 24, 2022, JFW emailed Zurich with proposals to remove fire-damaged

26 trees at two locations, because it was necessary to remove the debris to allow rebuilding

27 contractors to access the sites.  JFW wrote:  "It is our expectation and understanding that all of this

28 work is covered by our insurance policy under this claim.  We continue to work on the fence

1   replacement portion of the claim to prevent further property damage from deer, cattle and other

2   animals, but otherwise have stopped work while Zurich reviews the file and await reimbursement

3   for the $26M+ that Zurich has previously approved and JFW has performed/paid thus far on this

4   claim."  As of the date of this complaint, Zurich has not responded to JFW.

5          65.     On June 28, 2022, JFW provided a written response to Zurich regarding the

6   purported "List of Unnamed Locations" ("MULs") for the Kincade Fire claim.  JFW wrote:  "We

7   note that this list of purported MULs, apparently prepared for Zurich by JS Held . . . is a

8   preliminary and tentative list for discussion purposes only.  Nonetheless, we want to point out that

9   every location on the JS Held List qualifies as an Insured Location listed on a Schedule of

10  Locations on file with the Company and therefore is covered under the Zurich Policy's $400

11  million aggregate limit, not the $5 million limit applicable to MULs."  As of the date of this

12  complaint, Zurich has not responded to JFW.

13         **ii.      Zurich's Requests for Examinations Under Oath**

14         66.     At the same time Zurich was not responding to correspondence from JFW and

15  Alliant, Zurich claimed that it was continuing to investigate all four open fire claims.

16         67.     On January 21, 2022, JFW emailed Zurich a comprehensive spreadsheet setting

17  forth its losses to date for the Nuns/Tubbs and Pocket Fire and requesting payment for the

18  amounts that Zurich had not yet reimbursed.  Instead of responding to JFW's requests for

19  reimbursement, Zurich countered by reserving its rights as to all four open fire claims, and

20  demanding voluminous documents and examinations under oath pursuant to California Insurance

21  Code section 2071.1.

22         68.     By letter dated February 17, 2022 to JFW in reference to the Nuns/Tubbs Fire,

23  Zurich stated:

24  • "[Zurich] is continuing its investigation under a full Reservation of Rights under the
       Policy[;]"

25

26  • "Additionally, the letter requests that JFW provide additional information required for
       Zurich to complete its investigation and appear for an examination under oath as
27     required by the Policy[;]"

28  • "Zurich's investigation is ongoing and it is working to evaluate the nature and scope of

the claim and whether or to what extent the claim is covered under the Policy;"

- "Once its investigation is complete, Zurich will respond to JFW's claim summary more fully[;]"

- "Zurich is investigating JFW's claim with regard to trees."

- "Zurich's investigation continues in this regard relating to the debris removal claimed relating to trees."

- "Zurich is also investigating JFW's claim with regard to lost income[.] . . . due to lack of access to property[.]"

- "Zurich is also investigating issues relating to JFW's desire to use current or future pricing to address 2017 and 2019 building costs."

- "Zurich looks forward to working with you and your representatives toward a prompt investigation and resolution of these issues and the claim[.]"

69.     By letter dated February 17, 2022 to JFW in reference to the Pocket Fire, Zurich stated:

- "Zurich will continue its investigation of JFW's claim with regard to the Pocket Fire under a full Reservation of Rights under the Policy[;]"

- "Additionally, the letter requests that JFW provide additional information required for Zurich to complete its investigation and appear for an examination under oath as required by the Policy[;]"

- "Zurich's investigation is ongoing and it is working to evaluate the nature and scope of the claim and whether or to what extent the claim is covered under the Policy;"

- "Once its investigation is complete, Zurich will respond to JFW's claim summary more fully[;]"

- "Zurich is investigating JFW's claim with regard to trees."

- "Zurich's investigation continues in this regard relating to the debris removal claimed relating to trees."

- "Zurich is also investigating JFW's claim with regard to lost income[.] . . . due to lack of access to property[.]"

- "Zurich is also investigating issues relating to JFW's desire to use current or future pricing to address 2017 and 2019 building costs."

- "Zurich looks forward to working with you and your representatives toward a prompt investigation and resolution of these issues and the claim[.]"

70.     By letter dated February 17, 2022 to JFW in reference to the Kincade Fire, Zurich stated:

- "Zurich is continuing its investigation of JFW's claim with regard to the Kincade Fire under a full Reservation of Rights under the Policy[;]"

- "Additionally, the letter requests that JFW provide additional information required for Zurich to complete its investigation and appear for an examination under oath as required by the Policy[;]"

- "[Zurich's] investigation is ongoing and Zurich is working to evaluate the nature and scope of the claim and whether or to what extent the claim is covered under the Policy;"

- "Once its investigation is complete, Zurich will be able to respond to JFW's claim more fully[;]"

- "Zurich is investigating JFW's claim with regard to trees."

- "Zurich's investigation continues in this regard relating to the debris removal claimed relating to trees."

- "Zurich is also investigating JFW's claim with regard to lost income."

- "Zurich is also investigating issues relating to JFW's desire to use current or future pricing to address 2017 and 2019 building costs."

- "Zurich looks forward to working with you and your representatives toward a prompt investigation and resolution of these issues and the claim[.]"

71.     By letter dated February 17, 2022 to JFW in reference to the Glass Fire, Zurich stated:

- "Zurich will continue its investigation of JFW's claim with regard to the Glass fire under a full Reservation of Rights under the Policy[;]"

- "Additionally, the letter requests that JFW provide additional information required for Zurich to complete its investigation and appear for an examination under oath as required by the Policy[;]"

- "Zurich is investigating JFW's claim with regard to trees."

- "Zurich's investigation continues in this regard relating to the debris removal claimed relating to trees."

- "Zurich is also investigating JFW's claim with regard to lost income."

- "Zurich looks forward to working with you and your representatives toward a prompt investigation and resolution of these issues and the claim[.]"

72.     By letter dated March 18, 2022, Zurich's counsel requested that JFW provide a signed sworn Proof of Loss for the Nuns/Tubbs Fire claim and make its employees Sam Jamison and Jesus Velasquez available for sworn Examinations Under Oath ("EUO") pursuant to California Insurance Code section 2071.1.  The letter stated that the EUOs are "a necessary step in the investigation of [JFW]'s claim by Zurich."

73.     In the same March 18, 2022 letter, Zurich's counsel requested that JFW provide fifteen separate categories of documents related to the Nuns/Tubbs Fire (the "Nuns/Tubbs Fire document requests").  Zurich stated in the letter "The documents and information that we have requested are necessary for Zurich to accurately and thoroughly investigate and evaluate the Insured's claim."

74.     By letter dated March 18, 2022, Zurich's counsel requested that JFW provide a signed sworn Proof of Loss for the Pocket Fire claim and make its employees Sam Jamison and Jesus Velasquez available for sworn EUOs pursuant to California Insurance Code section 2071.1.  The letter stated that the EUOs are "a necessary step in the investigation of [JFW]'s claim by Zurich."

75.     In the same March 18, 2022 letter, Zurich's counsel requested that JFW provide fourteen separate categories of documents related to the Pocket Fire (the "Pocket Fire document requests").  Zurich stated in the letter "The documents and information that we have requested are necessary for Zurich to accurately and thoroughly investigate and evaluate the Insured's claim."

76.     By letter dated March 18, 2022, Zurich's counsel requested that JFW provide a signed sworn Proof of Loss for the Kincade Fire claim and make its employees Sam Jamison and Jesus Velasquez available for sworn EUOs pursuant to California Insurance Code section 2071.1.  The letter stated that the EUOs are "a necessary step in the investigation of [JFW]'s claim by Zurich."

77.     In the same March 18, 2022 letter, Zurich's counsel requested that JFW provide fifteen separate categories of documents related to the Kincade Fire (the "Kincade Fire document

1   requests"). Zurich stated in the letter "The documents and information that we have requested are

2   necessary for Zurich to accurately and thoroughly investigate and evaluate the Insured's claim."

3        78.    By letter dated March 18, 2022, Zurich's counsel requested that JFW provide a

4   signed sworn Proof of Loss for the Glass Fire claim and make its employees Sam Jamison and

5   Jesus Velasquez available for sworn EUOs pursuant to California Insurance Code section 2071.1.

6   The letter stated that the EUOs are "a necessary step in the investigation of [JFW]'s claim by

7   Zurich."

8        79.    In the same March 18, 2022 letter, Zurich's counsel requested that JFW provide

9   fourteen separate categories of documents related to the Glass Fire (the "Glass Fire document

10   requests"). Zurich stated in the letter "The documents and information that we have requested are

11   necessary for Zurich to accurately and thoroughly investigate and evaluate the Insured's claim."

12        80.    In all four of the March 18, 2022 EUO requests, Zurich wrote: "A copy of

13   Insurance Code section 2071.1 is enclosed for your reference."

14        81.    Insurance Code section 2071.1 states at subdivision (a): "This section applies to an

15   examination of an insured under oath pursuant to Section 2071 labeled 'Requirements in case loss

16   occurs' and other relevant provisions of that section, and to any policy that insures property and

17   contains a provision for examining an insured under oath, when the policy is originated or

18   renewed on and after January 1, 2002."

19        82.    On April 27, 2022, Zurich wrote in an email to JFW: "Zurich is in receipt of

20   numerous emails from you today and over the last several days. . . .  We outlined in our recent

21   letters the best method to address questions.  The documents, proofs of loss and examinations

22   under oath are designed to yield a full understanding of what is being claimed.  This will then

23   allow Zurich to analyze and apply coverage relief where applicable under the policy."

**iii.**    **JFW's Response to Zurich's Requests for Documents and Examinations Under Oath**

26        83.    On April 18, 2022, JFW wrote to Zurich to acknowledge receipt of Zurich's

27   March 18, 2022 letters requesting EUOs and documents.  JFW wrote:

28       • "We are still in the process of collecting voluminous documents from JFW to respond

to the Document Requests.  We hope to produce the documents to you starting the week of April 25, 2022.  We will continue to produce them on a rolling basis until our production is complete."

- "We believe it is premature for JFW to submit sworn proofs of loss, as JFW continues to ascertain its losses and value them.  Even the reconstruction cost valuations of certain structures damaged and destroyed in the 2017 Nuns/Tubbs and Pocket fires are still uncertain."

- "To allow us sufficient time to produce all the documents and then Zurich sufficient time to review them, I suggest that we push back the dates for the EUOs, which are currently scheduled for May 18 and 19, 2022, by approximately one month.  I am hopeful that Zurich will determine that the EUOs are unnecessary after having reviewed the documents.  In any event, this timing should permit you and me to have an informed discussion about the issues, whether the EUOs should proceed and, if so, what topics of inquiry should be included in any EUO(s)."

84.     By letter dated April 26, 2022, JFW produced 29,751 pages of documents to Zurich, which consisted almost entirely of JFW's prior communications and correspondence with Zurich related to the four open fire claims.

85.     By letter dated April 28, 2022, Zurich agreed to postpone the EUOs for approximately one month.

86.     On June 10, 2022, JFW produced 2,228 pages of documents, consisting of photographs related to the four open fire claims.

87.     On June 10, 2022, JFW submitted a separate sworn interim proof of loss for each of the four open fire claims.  Each interim proof of loss was accompanied by a live Excel workbook which provided detailed information regarding JFW's covered losses, paid invoices, and estimates for future repair or replacement work ("Exhibit A to Proof of Loss").  In addition, the interim proofs of loss for the Nuns/Tubbs Fire and Pocket Fire were accompanied by a summary of JFW's lost income resulting from its inability to access certain of its vineyards during the 2017 Wildfires ("Exhibit B to Proof of Loss").

88.     On June 14, 2022, JFW produced 70 pages of documents, consisting of previously unsubmitted invoices related to the Nuns/Tubbs Fire claim.

89.     On June 14, 2022, JFW produced 226 pages of documents, consisting of previously unsubmitted invoices related to the Kincade Fire claim.

90.     On June 14, 2022, JFW produced 98 pages of documents, consisting of previously

1    unsubmitted invoices related to the Glass Fire claim.

2           91.    On June 17, 2022, JFW provided written responses to Zurich's Nuns/Tubbs Fire

3    document requests and produced 879 additional pages of documents responsive to the requests.

4           92.    On June 17, 2022, JFW provided written responses to Zurich's Pocket Fire

5    document requests and produced 228 additional pages of documents responsive to the requests.

6           93.    On June 17, 2022, JFW provided written responses to Zurich's Kincade Fire

7    document requests and produced 2,578 additional pages of documents responsive to the requests.

8           94.    On June 17, 2022, JFW provided written responses to Zurich's Glass Fire

9    document requests and produced 337 additional pages of documents responsive to the requests.

10          95.    By letters dated June 30, 2022, Zurich acknowledged receipt of JFW's interim

11   proofs of loss and "the large volume of documents" and confirmed that the EUOs were scheduled

12   for July 19, 20, and 22, 2022.

13          96.    On July 1, 2022, JFW provided additional written responses to Zurich's

14   Nuns/Tubbs Fire document requests and produced 477 additional pages of documents responsive

15   to the requests.

16          97.    On July 1, 2022, JFW provided additional written responses to Zurich's Pocket Fire

17   document requests and produced 30 additional pages of documents responsive to the requests.

18          98.    On July 1, 2022, JFW provided additional written responses to Zurich's Kincade

19   Fire document requests and produced 772 additional pages of documents responsive to the requests.

20          99.    On July 1, 2022, JFW provided additional written responses to Zurich's Glass Fire

21   document requests and produced 56 additional pages of documents responsive to the requests.

22          100.   By letter dated July 7, 2022, Zurich requested additional documents from JFW

23   related to its claims for lost business income as a result of the 2017 Wildfires.  Even though Zurich

24   wrote in its February 17, 2022 letter that "Zurich is also investigating JFW's claim with regard to

25   lost income[.] . . . due to lack of access to property", Zurich misleadingly and wrongfully asserted

26   on July 7, 2022 that it had denied that portion of the claims in 2018.

27          101.   On July 11, 2022, JFW produced 87 pages of documents to support its claims for

28   lost business income it suffered as a result of civil authority and road closures/obstructions during

the 2017 Wildfires, which delayed harvest and prevented JFW from harvesting some of its grapes at their optimal ripeness, resulting in 88,509 cases of wine that was not marketable under JFW's labels.

102.    On July 15, 2022, JFW produced maps and a timeline to support its claims for lost business income it suffered as a result of civil authority and road closures/obstructions which delayed harvest during the 2017 Wildfires.

103.    Pursuant to Insurance Code sections 2071 and 2071.1, Zurich took examinations under oath of Sam Jamison, who is currently JFW's Senior Vice President of Engineering and Construction, on July 19 and 20, 2022.

104.    Pursuant to Insurance Code sections 2071 and 2071.1, Zurich took examinations under oath from Jesus Velasquez, who is currently JFW's Vice President of Risk Management, on July 22, 2022.

105.    By letter dated August 25, 2022, JFW set forth its position as to why the Policy provides coverage for JFW's lost business income suffered as a result of its inability to access certain of its vineyards and harvest its grapes at optimal ripeness during the 2017 Wildfires and noted that Zurich had never formally denied this portion of JFW's claim.

106.    In its August 25, 2022 letter, JFW wrote that Zurich's correspondence dated May 30, 2018, June 29, 2018, August 24, 2018, September 5, 2018, and November 19, 2018 all stated that Zurich's "investigation of these claims is ongoing."

107.    On September 1, 2022, Sam Jamison timely submitted signed and sworn errata sheets for his two-day EUO.

108.    On September 1, 2022, Jesus Velasquez timely submitted a signed and sworn errata sheet for his EUO.

**iv.    Additional Correspondence from JFW to Zurich Seeking Payments and/or Coverage Positions**

109.    On July 15, 2022, JFW wrote to Zurich "to formally request that Zurich make an interim payment to JFW for undisputed covered losses that JFW has incurred in connection with the [Kincade Fire] claim." JFW wrote:

- "By letter dated March 18, 2022, Zurich stated that its payment in the amount $26,352,007, along with all previous payments for this claim, 'represents [Zurich's] undisputed assessment of structural repairs and land improvements'[.]"

- "Zurich's total payments to date for this claim are exclusively for the estimated Actual Cash Value (ACV) of structures and land improvements."

- "Many other undisputed losses remain unpaid. . . .  According to our calculations, JFW has submitted invoices totaling $18,901,254.85 for debris removal, contents, equipment, preservation of property, extra expense, and professional fees.  Of this, $4,892,675.01 has been outstanding for at least two years and $8,448,480.99 has been pending for at least one year."

- "[M]any of these expenses were previously approved by [the current claim adjustor]'s predecessor, Cyndee Franklin.  In a reflection of how long payment of these approved expenses has been withheld, ***Ms. Franklin retired from Zurich over one year ago.***"

- "Zurich's failure to pay undisputed covered losses has imposed financial hardship on JFW.  JFW has had to obtain financing to pay many of these invoices."

110.    As of the date of this complaint, Zurich has not made any payment or otherwise responded to JFW's July 15, 2022 request for an interim payment for JFW's undisputed covered losses that JFW has incurred in connection with the Kincade Fire.

111.    On July 15, 2022, JFW wrote to Zurich "to formally request that Zurich make an interim payment to JFW for undisputed covered losses that JFW has incurred in connection with the [Glass Fire] claim."  JFW wrote:

- "By letter dated March 18, 2022, Zurich stated that its payment in the amount $1,491,102.94 was Zurich's 'Proposed ACV Cost' for structures, land improvements, and contents, less JFW's $1,000,000 deductible."

- "Zurich's total payments to date for this claim are exclusively for the estimated Actual Cash Value (ACV) of structures, land improvements, and contents."

- "Many other undisputed losses remain unpaid. . . .  According to our calculations, JFW has submitted invoices totaling $2,950,209.31 for debris removal, equipment, preservation of property, extra expense, and professional fees.  Of this, $389,424.47 has been outstanding for at least two years and $2,099,522.24 has been pending for at least one year."

- "[M]any of these expenses were previously approved by [the current claim adjustor]'s predecessor, Cyndee Franklin.  In a reflection of how long payment of these approved expenses has been withheld, ***Ms. Franklin retired from Zurich over one year ago.***"

- "Zurich's failure to pay undisputed covered losses has imposed financial hardship on JFW.  JFW has had to obtain financing to pay many of these invoices."

112.    As of the date of this complaint, Zurich has not responded to JFW's July 15, 2022 request for an interim payment for JFW's undisputed covered losses that JFW has incurred in connection with the Glass Fire.

**v.      Even After JFW Submitted Proofs of Loss, Produced 37,000+ Documents, and Provided Testimony in the EUOs, Zurich Has Not Paid Any Amounts to JFW and "Continues to Investigate".**

113.    By letter dated August 16, 2022 in reference to the Nuns/Tubbs Fire, Zurich's counsel wrote to JFW:

- "Zurich is not currently in a position to either accept or reject the Interim Proof of Loss as Zurich is continuing its review of the testimony provided at the EUO's as well as the approximately 38,000 pages of documents that were submitted … in connection with the EUO's.  Zurich will also be reviewing the signed EUO transcripts and noting any corrections made to the transcripts . . . .  The above steps are necessary in order to facilitate Zurich's investigation of the Insured's claim, as outlined in Zurich's prior correspondence and my letters.  Zurich is continuing to investigate the remaining aspects of the Nuns/Tubbs Fire claim under a complete reservation of rights . . . .  We will be in further contact with JFW's counsel once the steps outlined above have been completed."

- "Zurich is still seeking the facts it needs to reach conclusions regarding the claimed losses and it will continue to keep the Insured and its representatives updated regarding its investigation as it progresses."

114.    By letter dated August 16, 2022 in reference to the Pocket Fire, Zurich's counsel wrote to JFW:

- "Zurich is not currently in a position to either accept or reject the Interim Proof of Loss as Zurich is continuing its review of the testimony provided at the EUO's as well as the approximately 38,000 pages of documents that were submitted … in connection with the EUO's.  Zurich will also be reviewing the signed EUO transcripts and noting any corrections made to the transcripts . . . .  The above steps are necessary in order to facilitate Zurich's investigation of the Insured's claim, as outlined in Zurich's prior correspondence and my letters.  Zurich is continuing to investigate the remaining aspects of the Nuns/Tubbs Fire claim under a complete reservation of rights . . . .  We will be in further contact with JFW's counsel once the steps outlined above have been completed."

- "Zurich is still seeking the facts it needs to reach conclusions regarding the claimed losses and it will continue to keep the Insured and its representatives updated regarding

its investigation as it progresses."

115.    By letter dated August 16, 2022 in reference to the Kincade Fire, Zurich's counsel wrote to JFW:

- "Zurich is not currently in a position to either accept or reject the Interim Proof of Loss as Zurich is continuing its review of the testimony provided at the EUO's as well as the approximately 38,000 pages of documents that were submitted … in connection with the EUO's.  Zurich will also be reviewing the signed EUO transcripts and noting any corrections made to the transcripts . . . .  The above steps are necessary in order to facilitate Zurich's investigation of the Insured's claim, as outlined in Zurich's prior correspondence and my letters.  Zurich is continuing to investigate the remaining aspects of the Nuns/Tubbs Fire claim under a complete reservation of rights . . . .  We will be in further contact with JFW's counsel once the steps outlined above have been completed."

- "Zurich is still seeking the facts it needs to reach conclusions regarding the claimed losses and it will continue to keep the Insured and its representatives updated regarding its investigation as it progresses."

116.    By letter dated August 16, 2022 in reference to the Glass Fire, Zurich's counsel wrote to JFW:

- "Zurich is not currently in a position to either accept or reject the Interim Proof of Loss as Zurich is continuing its review of the testimony provided at the EUO's as well as the approximately 38,000 pages of documents that were submitted … in connection with the EUO's.  Zurich will also be reviewing the signed EUO transcripts and noting any corrections made to the transcripts . . . .  The above steps are necessary in order to facilitate Zurich's investigation of the Insured's claim, as outlined in Zurich's prior correspondence and my letters.  Zurich is continuing to investigate the remaining aspects of the Nuns/Tubbs Fire claim under a complete reservation of rights . . . .  We will be in further contact with JFW's counsel once the steps outlined above have been completed."

- "Zurich is still seeking the facts it needs to reach conclusions regarding the claimed losses and it will continue to keep the Insured and its representatives updated regarding its investigation as it progresses."

117.    On September 7, 2022, Zurich, JFW and their respective counsel met via videoconference to discuss:  (i) the protocol for JFW to submit invoices and proposals and for Zurich to process and respond to them; (ii) pending invoices for which JFW was waiting to be reimbursed; and (iii) identification of the remaining issues and establishment of a process for future discussions related to the four open fire claims.

118.    At the September 7, 2022 meeting, Zurich stated that its outside accounting consultant was preparing claim summaries for the four open fire claims.  Zurich stated that the claim summaries would "bring it plumb" and provide JFW with a summary of all expenses submitted.  Zurich promised that the claim summaries would be provided by the end of September.  Zurich agreed to provide JFW with a date certain within one week of the September 7, 2022 meeting as to when JFW could expect to receive the claim summaries within one week of the meeting.

119.    At the September 7, 2022 meeting, Zurich communicated that it did not intend to reimburse JFW for debris removal work already performed in connection with the Kincade and Glass Fire claims.  Specifically, Zurich's counsel stated that Zurich had already paid all the debris removal invoices Zurich intends to pay.  In response, JFW stated that, for the Kincade Fire, Zurich had paid zero for debris removal, in addition to failing to pay other outstanding debris removal costs as to the other fire claims.

120.    Zurich did not provide JFW with a date certain by September 14, 2022, and still has not done so.

121.    In a September 16, 2022 email, Zurich's counsel wrote that it was taking the "accounting team longer than Zurich initially expected to put together the spread sheets [sic] compiling and summarizing claim-related information" and that they would not be complete until mid-October.  Zurich's counsel further stated "[t]he claim summaries … will not necessarily include 'what payments Zurich will be making for each item', as this will still be subject to Zurich's coverage review and approval of each open item on the claim summaries once they are completed by the accounting consultants."

122.    In that same September 16, 2022 email, Zurich's counsel wrote:  "Zurich will be receiving and reviewing the claim summaries prepared by its accounting consultant along with other information obtained during its investigation and will advise JFW regarding the nature and extent of any further payments that may be made on the respective wildfire claims in due course.  I would also like to remind you that we are still awaiting receipt of the corrected and signed EUO transcripts per the policy requirements, so that we may complete our review of the information

1    obtained in connection with the EUO's."  However, the corrected and signed EUO transcripts

2    were submitted on September 1, 2022.

3           123.    Zurich did not provide JFW with claim summaries for the four open fire claims by

4    the end of September, or mid-October, and still has not done so as of the date of the filing of this

5    Complaint.

6           124.    In an October 14, 2022 email, Zurich's counsel wrote:  "The court reporter did

7    subsequently advise us that they had received the correction and signature pages on the EUO's of

8    JFW's representatives, which I had not been made aware of at the time of my September 16

9    email[.]"

10          125.    By letter dated October 19, 2022, JFW again communicated to Zurich its position

11   that JFW's debris removal losses were covered under the Policies and that payment is due to JFW

12   for debris removal expenses incurred in connection with the Kincade and Glass Fire claims.  JFW

13   wrote:

14       •    "[T]he policy provides a limit of up to $25 million for 'reasonable and necessary costs
            incurred to demolish and remove debris of property from an Insured Location that
15          remains following direct physical loss or damage resulting from a Covered Cause of
16          Loss.'"

17       •    "[F]or nearly five years, JFW worked with Alliant and Ms. Franklin to obtain approval
            for debris removal work for the 2017 Wildfires and later the Kincade and Glass Fires.
18          Inexplicably, even though the policy provides $25 million for debris removal coverage
            for each, Ms. Franklin actually approved millions of dollars' worth of debris removal
19          work, and JFW incurred the expenses and submitted the invoices to Zurich, Zurich has
20          failed to make *any debris removal payments* for the Kincade or Glass Fires."

21       •    "Please provide Zurich's coverage position regarding debris removal for the Kincade
            and Glass Fires and advise when Zurich anticipates it will be able to issue payment for
22          the work that it has already approved."

23          126.    By letter dated November 7, 2022, Zurich wrongfully denied debris removal

24   coverage for trees damaged or destroyed by the Kincade and Glass Fires.  Zurich's

25   November 7, 2022 letter did not provide its coverage position as to debris removal coverage for

26   damaged or destroyed structures and other personal property in connection with the Kincade and

27   Glass Fire claims.

28          127.    In the same November 7, 2022 letter, Zurich also denied JFW's March 10, 2022,

April 18, 2022, and October 19, 2022 requests for approval of proposals to remove fire-damaged trees related to the Pocket Fire, and Zurich stated that the letter responded to JFW's requests for debris removal coverage for the Nuns/Tubbs Fire.

**G.     Zurich Breached the Policies by Engaging in Delay Tactics and Failing to Communicate with Its Insured JFW.**

128.     JFW properly notified Zurich of its claims arising from the 2017 Wildfires, the Kincade Fire, and the Glass Fire.

129.     JFW timely submitted all relevant information, invoices, proposals, and receipts related to the 2017 Wildfires, the Kincade Fire, and the Glass Fire.

130.     JFW cooperated with Zurich, its consultants, adjustors, and inspectors and made its property available for inspection.

131.     JFW complied with Zurich's requests for production of documents and EUOs.

132.     JFW has provided all documentation reasonably necessary for Zurich to adjust JFW's claims arising from the 2017 Wildfires, the Kincade Fire, and the Glass Fire.

133.     Zurich has failed to acknowledge and act reasonably promptly upon communications with respect to the four open fire claims.

134.     Zurich has failed to make timely and complete claim payments and failed to provide JFW with detailed explanations of what Zurich actually did pay for.

135.     Zurich has failed to honor its obligations under the Policies.

## V.     CAUSES OF ACTION

### First Cause of Action

### Breach of Contract (2017 Policy)

136.     JFW incorporates the foregoing allegations herein by reference.

137.     The 2017 Policy is a legally binding written contract between JFW and Zurich. JFW is the named "Insured" under the Policy.

138.     The Policy imposes upon Zurich a duty to insure JFW "against direct physical loss of or damage caused by a **Covered Cause of Loss** at an Insured Location[.]"

139.     JFW has fully satisfied its obligations under the Policy, including the payment of

premiums, submission to Zurich of timely written notice of claims, and cooperation with Zurich in its investigation of the claims, and/or (a) such conditions have been waived, or (b) their satisfaction is otherwise excused by either operation of California public policy, statutes, regulations or law, or Zurich's conduct.

140.     Zurich breached the 2017 Policy by failing or refusing to pay JFW for its losses in connection with the 2017 Wildfires.

141.     As a direct and proximate cause of Zurich's breach, JFW has incurred damages to be proven at the time of trial.

**Second Cause of Action**

**Breach of Implied Covenant of Good Faith and Fair Dealing (2017 Policy)**

142.     JFW incorporates the foregoing allegations herein by reference.

143.     Implied in the Policy issued by Zurich is a covenant that Zurich act, and continue to act, in good faith.

144.     Zurich's five-year investigation of JFW's claim and ongoing tactics of delay and misdirection have breached the duty of good faith and fair dealing owed to JFW.

145.     Zurich has searched for ways to delay a coverage decision and to reduce its losses by not fully paying JFW for the 2017 Wildfire claims, even though Zurich has already admitted the claims are covered.

146.     Zurich did so to save itself tens of millions of dollars that it would otherwise have to pay JFW.

147.     Examples of Zurich's ongoing bad-faith conduct are set forth above and include (1) failing to respond to JFW's requests for reimbursement; (2) failing to respond to JFW's requests for approval of work; (3) approving work but then failing to pay for it, claiming that it cannot reimburse JFW for its previously incurred expenses until after JFW submitted thousands of pages of documentation and submitted to EUOs; (4) claiming that it cannot reimburse JFW for its previously incurred expenses because it must first review the thousands of pages of documentation provided by JFW; and (5) claiming that it cannot reimburse JFW for its previously incurred expenses until it received JFW's signed transcript corrections for the EUOs – when JFW had

1    already returned them.

2         148.    Zurich has also engaged in bad faith conduct by promising to provide claim

3    summaries and to provide a date certain to do so but then failing to follow through.

4         149.    Zurich used its purported need to further investigate the claims – years after it

5    began making reimbursement payments to JFW – as an excuse to cease adjusting the claim and

6    processing any payments since February 2022.

7         150.    Zurich's conduct violates statutory duties set forth in California Insurance Code

8    sections 790.03, including but not limited to (h)(2), (3), (4), (5), (6) and (13).

9         151.    As a direct and proximate result of Zurich's breach, JFW has incurred damages to

10   be proven at the time of trial.

11        152.    To obtain the benefits due under the Policy issued by Zurich, including the

12   preparation, filing and service of the instant action, JFW has incurred and will continue to incur,

13   attorney's fees and costs to secure the benefits owed it under the Policy.  All of the fees, costs and

14   expenses incurred by JFW to do so are recoverable from Zurich in accordance with *Brandt v.*

15   *Superior Court,* 37 Cal.3d. 813 (1985).

16        153.    Zurich's conduct was done with malice, fraud and/or oppression within the

17   meaning of California Civil Code § 3294.  Zurich knew that by delaying investigation of JFW's

18   claim and paying only a small fraction of JFW's losses, Zurich would force JFW to finance its

19   own reconstruction efforts while Zurich protected its own profits by refusing to pay the lion's

20   share of JFW's losses.  Because Zurich knew that it did not have a valid reason to deny coverage,

21   it delayed instead of timely communicating its coverage positions, stringing JFW along with the

22   hope that payment would be forthcoming.  In furtherance of this scheme, Zurich:  (1) ignored

23   JFW's communications; (2) buried JFW with meaningless letters, document requests and demands

24   for testimony; and (3) failed to substantively respond to JFW or pay substantiated amounts

25   covered by the 2017 Policy despite having received all the information it had requested of JFW.

26   JFW is thus owed punitive or exemplary damages pursuant to California Civil Code § 3294.

27

28

**Third Cause of Action**

**Breach of Contract (2018 Policy)**

154.   JFW incorporates the foregoing allegations herein by reference.

155.   The 2018 Policy is a legally binding written contract between JFW and Zurich. JFW is the named "Insured" under the Policy.

156.   The Policy imposes upon Zurich a duty to insure JFW "against direct physical loss of or damage caused by a **Covered Cause of Loss** at an Insured Location[.]"

157.   JFW has fully satisfied its obligations under the Policy, including the payment of premiums, submission to Zurich of timely written notice of claims and cooperation with Zurich in its investigation of the claims, and/or (a) such conditions have been waived, or (b) their satisfaction is otherwise excused by either operation of California public policy, statutes, regulations or law, or Zurich's conduct.

158.   Zurich breached the 2018 Policy by failing or refusing to reimburse JFW for its losses in connection with the Kincade Fire.

159.   As a direct and proximate cause of Zurich's breach, JFW has incurred damages to be proven at the time of trial.

**Fourth Cause of Action**

**Breach of Implied Covenant of Good Faith and Fair Dealing (2018 Policy)**

160.   JFW incorporates the foregoing allegations herein by reference.

161.   Implied in the Policy issued by Zurich is a covenant that Zurich act, and continue to act, in good faith.

162.   Zurich's four-year investigation of JFW's claim and ongoing tactics of delay and misdirection have breached the duty of good faith and fair dealing owed to JFW.

163.   Zurich has searched for ways to delay a coverage decision and to reduce its losses by not fully reimbursing JFW for the Kincade Fire claim, even though Zurich has already admitted the claim is covered.

164.   Zurich did so to save itself tens of millions of dollars that it would otherwise have to pay JFW.

165.     Examples of Zurich's ongoing bad-faith conduct are set forth above and include (1) failing to respond to JFW's requests for reimbursement; (2) failing to respond to JFW's requests for approval of work; (3) claiming that it cannot reimburse JFW for its previously incurred expenses until after JFW submitted thousands of pages of documentation and submitted to EUOs; (4) claiming that it cannot reimburse JFW for its previously incurred expenses because it must first review the thousands of pages of documentation provided by JFW; (5) wrongfully denying JFW's debris removal claim without support of binding legal authority when the plain language of the Policy and California case law support coverage; and (6) claiming that it cannot reimburse JFW for its previously incurred expenses until it received JFW's signed transcript corrections for the EUOs – when JFW had already returned them.

166.     Zurich has also engaged in bad faith conduct by promising to provide claim summaries and to provide a date certain to do so but then failing to follow through.

167.     Zurich used its purported need to further investigate the claims – years after it began making reimbursement payments to JFW -- as an excuse to cease adjusting the claim and processing any payments since February 2022.

168.     Zurich's conduct violates statutory duties set forth in California Insurance Code sections 790.03, including but not limited to (h)(2), (3), (4), (5), (6) and (13).

169.     As a direct and proximate result of Zurich's breach, JFW has incurred damages to be proven at the time of trial.

170.     In order to obtain the benefits due under the Policy issued by Zurich, including the preparation, filing and service of the instant action, JFW has incurred and will continue to incur, attorney's fees to secure the benefits owed it under the Policy.  All of the fees, costs and expenses incurred by JFW to do so are recoverable from Zurich in accordance with *Brandt v. Superior Court,* 37 Cal.3d. 813 (1985).

171.     Zurich's conduct was done with malice, fraud and/or oppression within the meaning of California Civil Code § 3294.  Zurich knew that by delaying investigation of JFW's claim and withholding payment of more than $26 million of JFW's Kincade Fire-related losses, Zurich would force JFW to finance its own reconstruction efforts while Zurich protected its own

1    profits by refusing to pay the lion's share of JFW's losses.  Because Zurich knew that it did not

2    have a valid reason to deny coverage, it delayed instead of timely communicating its coverage

3    positions, stringing JFW along with the hope that payment would be forthcoming.  In furtherance

4    of this scheme, Zurich:  (1) ignored JFW's communications; (2) buried JFW with meaningless

5    letters, document requests and demands for testimony; and (3) failed to substantively respond to

6    JFW or pay substantiated amounts covered by the 2018 Policy despite having received all the

7    information it had requested of JFW.  JFW is thus owed punitive or exemplary damages pursuant

8    to California Civil Code § 3294.

9                                 **Fifth Cause of Action**

10                            **Breach of Contract (2019 Policy)**

11        172.    JFW incorporates the foregoing allegations herein by reference.

12        173.    The 2019 Policy is a legally binding written contract between JFW and Zurich.

13   JFW is the named "Insured" under the Policy.

14        174.    The Policy imposes upon Zurich a duty to insure JFW "against direct physical loss

15   of or damage caused by a **Covered Cause of Loss** at an Insured Location[.]"

16        175.    JFW has fully satisfied its obligations under the Policy, including the payment of

17   premiums, submission to Zurich of timely written notice of claims and cooperation with Zurich in

18   its investigation of the claims, and/or (a) such conditions have been waived, or (b) their

19   satisfaction is otherwise excused by either operation of California public policy, statutes,

20   regulations or law, or Zurich's conduct.

21        176.    Zurich breached the 2019 Policy by refusing to reimburse JFW for its losses in

22   connection with the Glass Fire.

23        177.    As a direct and proximate cause of Zurich's breach, JFW has incurred damages to

24   be proven at the time of trial.

25                                **Sixth Cause of Action**

26        **Breach of Implied Covenant of Good Faith and Fair Dealing (2019 Policy)**

27        178.    JFW incorporates the foregoing allegations herein by reference.

28        179.    Implied in the Policy issued by Zurich is a covenant that Zurich act, and continue to

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

1    act, in good faith.

2        180.    Zurich's three-year investigation of JFW's claim and ongoing tactics of delay and

3    misdirection have breached the duty of good faith and fair dealing owed to JFW.

4        181.    Zurich has searched for ways to delay a coverage decision and to reduce its losses

5    by not fully reimbursing JFW for the Glass Fire claim, even though Zurich has already admitted

6    the claims are covered.

7        182.    Zurich did so to save itself tens of millions of dollars that it would otherwise have

8    to pay JFW.

9        183.    Examples of Zurich's ongoing bad-faith conduct are set forth above and include

10   (1) failing to respond to JFW's requests for reimbursement; (2) failing to respond to JFW's

11   requests for approval of work; (3) claiming that it cannot reimburse JFW for its previously

12   incurred expenses until after JFW submitted thousands of pages of documentation and submitted

13   to EUOs; (4) claiming that it cannot reimburse JFW for its previously incurred expenses because it

14   must first review the thousands of pages of documentation provided by JFW; (5) wrongfully

15   denying JFW's debris removal claim without support of binding legal authority when the plain

16   language of the Policy and California case law support coverage; and (6) claiming that it cannot

17   reimburse JFW for its previously incurred expenses until it received JFW's signed transcript

18   corrections for the EUOs – when JFW had already returned them.

19       184.    Zurich has also engaged in bad faith conduct by promising to provide claim

20   summaries and to provide a date certain to do so but then failing to follow through.

21       185.    Zurich used its purported need to further investigate the claims – years after it

22   began making reimbursement payments to JFW -- as an excuse to cease adjusting the claim and

23   processing any payments since February 2022.

24       186.    Zurich's conduct violates statutory duties set forth in California Insurance Code

25   sections 790.03, including but not limited to (h)(2), (3), (4), (5), (6) and (13).

26       187.    As a direct and proximate result of Zurich's breach, JFW has incurred damages to

27   be proven at the time of trial.

28       188.    In order to obtain the benefits due under the Policy issued by Zurich, including the

1   preparation, filing and service of the instant action, JFW has incurred and will continue to incur,

2   attorney's fees to secure the benefits owed it under the Policy.  All of the fees, costs and expenses

3   incurred by JFW to do so are recoverable from Zurich in accordance with *Brandt v. Superior*

4   *Court,* 37 Cal.3d. 813 (1985).

5        189.    Zurich's conduct was done with malice, fraud and/or oppression within the

6   meaning of California Civil Code § 3294.  Zurich knew that by delaying investigation of JFW's

7   claim and paying only a small fraction of JFW's losses, Zurich would force JFW to finance its

8   own reconstruction efforts while Zurich protected its own profits by refusing to pay the lion's

9   share of JFW's losses.  Because Zurich knew that it did not have a valid reason to deny coverage,

10  it delayed instead of timely communicating its coverage positions, stringing JFW along with the

11  hope that payment would be forthcoming.  In furtherance of this scheme, Zurich:  (1) ignored

12  JFW's communications; (2) buried JFW with meaningless letters, document requests and demands

13  for testimony; and (3) failed to substantively respond to JFW or pay substantiated amounts

14  covered by the 2019 Policy despite having received all the information it had requested of JFW.

15  JFW is thus owed punitive or exemplary damages pursuant to California Civil Code § 3294.

16  **Seventh Cause of Action**

17  **Declaratory Relief**

18       190.    JFW incorporates the foregoing allegations herein by reference.

19       191.    JFW is informed and believes, and based thereon alleges, that an actual controversy

20  has arisen by and between JFW, on the one hand, and Zurich, on the other, with respect to the

21  parties' respective rights and obligations under the Policies.

22       192.    Pursuant to California Civil Code § 1060, JFW seeks a judicial declaration that,

23  with respect to the Policies, JFW is entitled to full coverage for the losses described above.

24       193.    JFW also seeks a declaration that it is entitled to its attorney's fees, costs, and

25  expenses resulting from Zurich's breaches.

26       194.    JFW has no other plain, speedy or adequate remedy at law.

27  **<u>PRAYER FOR RELIEF</u>**

28       Wherefore, JFW prays for the following relief:

a.      For damages in an amount to be proven at trial;

b.      For damages in the form of attorneys' fees pursuant to *Brandt v. Superior Court,* 37 Cal. 3d 813 (1985);

c.      For punitive or exemplary damages pursuant to California Civil Code § 3294;

d.      For costs of suit incurred herein;

e.      For an award of pre-judgment interest;

f.      For declaratory relief;

g.      For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

JFW demands a trial by jury for all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated:  December 9, 2022

FARELLA BRAUN + MARTEL LLP

By:      */s/ Tyler C. Gerking*
Tyler C. Gerking
Karen P. Kimmey
Janice W. Reicher
Jennifer M. Bentley

Attorneys for Jackson Family Wines, Inc.