UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKSON FAMILY WINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendant. | Case No. 22-cv-07842-AMO <br><br> **ORDER DENYING MOTION TO BIFURCATE** <br><br> Re: Dkt. Nos. 38, 50 |

Before the Court is Zurich American Insurance Company's motion to bifurcate and stay discovery of Jackson Family Wines, Inc.'s bad faith insurance claims. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for December 14, 2023 is **VACATED**. *See* Civil L.R. 7-6. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **DENIES** the motion for the following reasons.

I.     **BACKGROUND**

Plaintiff Jackson Family Wines, Inc. ("JFW") owns and operates dozens of wineries and vineyards in California. ECF 1 ("Compl.") ¶ 10. JFW purchased three successive property insurance policies from Defendant Zurich American Insurance Company ("Zurich"), for 2017-18, 2018-19, and 2019-20. *Id.* ¶¶ 12-15. JFW suffered substantial losses to its properties in four separate wildfires in Napa and Sonoma Counties: the Pocket Fire and Nuns/Tubbs Fire in 2017, the Kincade Fire in 2019, and the Glass Fire in 2020. *Id.* ¶¶ 1, 18-35. Zurich failed to pay JFW the full amount owed for JFW's insurance claims resulting from the California wildfires in the three policy terms. *Id.* ¶¶ 1, 39-47. In addition, Zurich has delayed in responding and failed to

1   respond to JFW's correspondence regarding the claims despite JFW's submission of requested

2   documentation. *Id.* ¶¶ 48-65, 83-102, 113-127.

3         JFW filed its complaint on December 9, 2022, bringing causes of action for breach of

4   contract and breach of the implied covenant of good faith and fair dealing (insurance bad faith

5   claims) with respect to each of the relevant insurance policies. Compl. ¶¶ 136-194. On July 10,

6   2023, Zurich filed a motion to bifurcate and stay JFW's insurance bad faith claims pending the

7   resolution of JFW's breach of contract claims. ECF 38 ("Motion") at 7.

8   **II.     LEGAL STANDARD**

9         "Federal Rule of Civil Procedure 42(b) permits a court to order a separate trial of separate

10   claims or issues '[f]or convenience, to avoid prejudice, or to expedite and economize.'" *Est. of*

11   *Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) (quoting Fed. R. Civ. P. 42(b)).

12   Judges have "broad discretion" over bifurcation. *Zivkovic v. S. California Edison Co.*, 302 F.3d

13   1080, 1088 (9th Cir. 2002). "Rule 42(b) merely *allows*, but does not require, a trial court to

14   bifurcate cases" for convenience or to avoid prejudice. *Hangarter v. Provident Life & Acc. Ins.*

15   *Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (emphasis in original). "Courts 'consider several factors

16   in determining whether bifurcation is appropriate, including separability of the issues,

17   simplification of discovery and conservation of resources, and prejudice to the parties.'" *Jones v.*

18   *Nat'l R.R. Passenger Corp.*, 2018 WL 6606247, at *4 (N.D. Cal. Dec. 17, 2018) (quoting

19   *McDermott v. Potter*, 2010 WL 956808, at *1 (N.D. Cal. Mar. 12, 2010)); *see Hirst v. Gertzen*,

20   676 F.2d 1252, 1261 (9th Cir. 1982). The party requesting bifurcation bears the burden of proving

21   it is warranted. *See Gutierrez v. Santa Rosa Mem'l Hosp.*, No. 16-CV-02645-SI, 2018 WL

22   4773059, at *1 (N.D. Cal. Oct. 3, 2018) (citing *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*,

23   144 F.R.D. 99, 102 (N.D. Cal. 1992)).

24   **III.    DISCUSSION**

25         Zurich argues that bifurcation is appropriate here because it will prevent potential prejudice

26   and jury confusion and preserve judicial efficiency. Motion at 13-19. Zurich also argues that

27   discovery of the insurance bad faith claims should be stayed because if the breach of contract

28   claims fail, the bad faith claims fail as a matter of law, and a stay would save expenses and "avoid

burdensome discovery disputes." *Id.* at 7, 14.  The Court addresses the potential of avoiding prejudice and any judicial efficiency from bifurcation before considering whether to stay discovery of the insurance bad faith claims.

### 1. Potential Prejudice

Zurich argues that trying the breach of contract and bad faith claims together will prejudice Zurich because it may cause jury confusion in differentiating the two sets of claims.  Motion at 13-14.  Zurich argues that evidence of the bad faith claims is irrelevant to the breach of contract claims and will "inflame[] the emotions of the jury, motivating them to use the extraneous information . . . to reward or punish one side."  ECF 47 ("Reply") at 6.[1]

While there is a potential for jury confusion given that some evidence will only be relevant to the insurance bad faith claims, clear limiting instructions are likely to cure potential prejudice from trying the claims together.  *See Bayramoglu v. Estelle*, 806 F.2d 880, 888 (9th Cir. 1986) (quoting *United States v. Berry*, 627 F.2d 193, 198 (9th Cir. 1980) ("A timely instruction from the judge usually cures the prejudicial impact of evidence unless it is highly prejudicial or the instruction is clearly inadequate."); *see, e.g.*, *Am. Steel & Stairways, Inc. v. Lexington Ins. Co.*, No. 12-CV-03103-JST, 2013 WL 4425704, at *2 (N.D. Cal. Aug. 14, 2013) ("The risk of jury confusion, if any, can be addressed by specific jury instructions and a special verdict form.  Clear limiting instructions will allow the jury to differentiate evidence related to coverage liability and evidence related to damages for bad faith."); *see also Smith v. Off. of Alameda Cnty. Pub. Def.*, No. 20-CV-08534-JST, 2022 WL 20016848, at *1 (N.D. Cal. Aug. 30, 2022) (holding that "the Court will evaluate the prejudicial effect of any *Monell*-related evidence and issue limiting instructions to ameliorate any prejudice" rather than bifurcate the claims).  Moreover, the Court is not persuaded that the mere possibility of juror confusion warrants bifurcation.

---

[1] Zurich also asserts that JFW will not face prejudice from bifurcation because both parties would avoid discovery disputes and JFW will be able to pursue its bad faith claims later.  Motion at 14.  JFW counters that bifurcation will, among other issues, delay litigation and increase its costs.  ECF 46 ("Response") at 29.  The Court finds JFW's arguments persuasive here.  *See, e.g.*, *Martinez v. Cnty. of Alameda*, No. 20-CV-06570-TSH, 2023 WL 7194873, at *5 (N.D. Cal. Nov. 1, 2023) (finding party's concerns about increased litigation costs and extended litigation to be "valid concerns").

### 2. Preservation of Judicial Resources

Zurich also argues that bifurcation is appropriate because "[r]esolution of the contract claims in favor of Zurich will dispose of the remaining bad faith claims." Motion at 15. Under California law, a bad faith claim requires first establishing that coverage is owed under the contract. *Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1209 (2009), *as modified on denial of reh'g* (Jan. 30, 2009) (citation omitted) ("to establish the insurer's 'bad faith' liability, the insured must show that the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or 'without proper cause'"). According to Zurich, this supports bifurcation because if the contract claims fail, so do the bad faith claims.

The parties dispute whether the two sets of claims will require different evidence and witnesses. Motion at 18-19; Response at 21-23. According to Zurich, evidence about its reinsurance and internal reserve, claim handling processes, and employment history of adjusters is not relevant to the more limited question of whether there is coverage under the insurance policies. Motion at 18-19. JFW responds that many of the same witnesses (e.g., Zurich employees, consultants, and adjusters) would provide evidence relevant to both the breach of contract and the bad faith claims, meaning bifurcation would require JFW to call these witnesses twice to testify to about similar facts. Response at 21-22.

The Court finds persuasive JFW's argument that the issues in the two sets of claims overlap:

> Zurich's own description of the Debris Removal coverage demonstrates how the issues of coverage and bad faith overlap. Zurich states that "the Policies cover only costs that are both reasonable and necessary. Whether these conditions are met is entirely independent of any claim handling issues." Mot. at 5. But evidence of the reasonableness of the costs that JFW incurred and submitted is probative of whether the claims should be covered, and the reasonableness of such costs has a direct bearing on whether Zurich's refusal or failure to pay such costs was unreasonable (i.e., breached the Policies and acted in bad faith).

Response at 22 n.8. Thus, if JFW prevails on its breach of contract claims, some of the same witnesses who provide relevant testimony for the breach of contract claim will likely need to testify a second time on the bad faith claims, making bifurcation inefficient.

4

At this stage, the Court is not persuaded that bifurcation will conserve judicial resources. While some efficiency may be gained from bifurcation if JFW fails to establish its breach of contract claims, any efficiency will be entirely lost if JFW prevails in its breach of contract claims. *See Am. Steel & Stairways, Inc*, 2013 WL 4425704, at *3 ("Some limited efficiency will be achieved if it turns out that Plaintiffs are unable to [establish their first claim], but there will be substantial inconvenience to the Court and jurors if the claims are bifurcated and Plaintiffs prevail on the first claim."). Accordingly, the Court denies the motion to bifurcate, and the attendant request that the bad faith claims be stayed.

### 3. Discovery Dispute

Now that the Court has ruled on Zurich's motion to bifurcate the bad faith claims, the Court terminates the pending discovery dispute, ECF 50, and orders the parties to meet and confer further regarding their disputes. If the parties are unable to reach a resolution, they may submit a new joint discovery letter brief.

**IT IS SO ORDERED.**

Dated: December 12, 2023

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**