UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKSON FAMILY WINES, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>    Defendant. | Case No. 22-cv-07842-AMO (DMR)<br><br>**ORDER ON PLAINTIFF'S MOTION TO COMPEL**<br><br>Re: Dkt. No. 75 |

The parties filed a joint discovery letter in which Plaintiff Jackson Family Wines, Inc. ("JFW") moves to compel Defendant Zurich American Insurance Company ("Zurich") to produce documents in response to one request for production ("RFP"). [Docket No. 75.] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion to compel is granted.

## I. BACKGROUND

This is a breach of insurance contract and bad faith action. JFW is "a family owned-business that owns and operates dozens of vineyards and wineries throughout California." It alleges that it purchased three insurance policies from Zurich that together provided $1.1 billion in coverage. JFW alleges that it "suffered substantial property and other damage from four wildfires that occurred in the three different policy terms" in Napa and Sonoma Counties. It submitted four fire-related claims totaling over $430 million. JFW alleges that Zurich has deliberately delayed the four claims to "avoid paying tens of millions of dollars in coverage that is clearly owed" under the policies. Compl. ¶¶ 1, 2, 10, 11. JFW brings claims for breach of the three insurance agreements, breach of the implied covenant of good faith and fair dealing, and declaratory relief, and seeks punitive damages.

1  JFW now seeks to compel Zurich to respond to RFP No. 26. The RFP requests "all documents relating to any communications between Zurich and any reinsurer relating to the policies." Jt. Letter Ex. A. JFW narrowed the request to "communications between Zurich and any reinsurer relating to JFW's four fire claims." Jt. Letter 1.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "While the party seeking to compel discovery has the burden of establishing that its request satisfies relevancy requirements, the party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015) (citing *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012)).

## III. DISCUSSION

Zurich made several objections to RFP No. 26 as originally written. It objects to the narrowed request for "communications between Zurich and any reinsurer relating to JFW's four fire claims" based on relevance. Zurich also argues that the requested communications contain "confidential financial and other information." Jt. Letter 4, 6.

"Reinsurance is a special form of insurance obtained by insurance companies to help spread the burden of indemnification." *Catholic Mut. Relief Soc. v. Superior Court*, 42 Cal. 4th 358, 368 (2007) (cleaned up). "A reinsurance is presumed to be a contract of indemnity against liability, and not merely against damage." Cal. Ins. Code § 621. The California Supreme Court

has held that "[b]ecause a contract of reinsurance is defined by statute as a contract of indemnity made for the benefit of the liability insurer, as a general matter it has no relevance in an underlying tort action brought against an insured under the policy of liability insurance." *Catholic Mut.*, 42 Cal. 4th at 368 (discussing Cal. Ins. Code §§ 620, 621). Nonetheless, the court noted that "reinsurance agreements may be discoverable . . . within the sound discretion of the trial court" where the "reinsurance agreements themselves were in dispute or were otherwise directly at issue or relevant to the litigation at hand." *Id*. at 368 n.7. The court discussed *Lipton v. Superior Court*, 48 Cal. App. 4th 1599, 1617-18 (1996), in which the court "approved of the discovery of an insurer's reinsurance information . . . because the insurer was the defendant in a bad faith action, and the reinsurance information was directly relevant to the issues in that proceeding," noting that *Lipton* limited discovery to "unprivileged communications between the insurer and reinsurer concerning coverage issues and potential liability[.]" *Id*.

Here, JFW notes that it seeks only communications between Zurich and its reinsurers about the four fire claims and contends that such communications are relevant for two reasons. First, JFW argues that the requested communications are probative of Zurich's state of mind with respect to the four fire claims, including Zurich's assessment of its obligations on the claims and valuation of the losses, the adequacy of its investigation, and "whether Zurich acted contrary to its own assessment to minimize its payments." Jt. Letter 1. JFW asserts that Zurich's state of mind is relevant to both the bad faith claim, which requires JFW to "establish that Zurich unreasonably withheld payments due under the policies,"[1] and the request for punitive damages, which requires a showing of oppression, fraud, or malice. *Id*. (citations omitted; emphasis removed) (citing Cal. Civ. Code § 3294(a)). JFW points to its allegation that "Zurich has engaged in a deliberate campaign to delay the four open fire claims and avoid paying tens of millions of dollars in coverage that is clearly owed under the three insurance policies that JFW purchased." *Id*. (citing Compl. ¶ 2).

---

[1] "[T]o establish [an] insurer's 'bad faith' liability, the insured must show that the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or 'without proper cause.'" *Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1209 (2009).

3

1      Relatedly, JFW argues that the requested communications could also show "how and why
2   Zurich's state of mind shifted over time," which it claims "may evidence bad faith." Jt. Letter 2.
3   For example, JFW alleges that Zurich originally paid for removal of fire-damaged trees under one
4   of the three policies and later reversed its position and denied coverage for the same expenses. *Id*.
5   It argues that Zurich's communications with its reinsurers may bear on whether it "unreasonably,
6   and possibly with malice, reversed its coverage position to withhold payments it owed." *Id*.
7      Second, JFW argues that the communications are relevant to the parties' dispute regarding
8   coverage. JFW alleges that Zurich breached the insurance policies "by not paying JFW's covered
9   losses.[]" Jt. Letter 1. The parties dispute the scope of coverage under the policies, including
10  whether the policies cover certain destroyed structures and removal of fire-damaged trees. *Id*.
11  (citing Compl. ¶¶ 56, 65, 125, 126). JFW argues that communications between Zurich and its
12  reinsurers "may reveal that [Zurich] agrees with JFW's interpretation of the policies to provide full
13  coverage for these losses." *Id*.
14     Zurich disputes the relevance of the communications. With respect to its state of mind,
15  Zurich argues that "the best evidence of how Zurich handled JFW's claim is" Zurich's claim file,
16  which it already produced. Jt. Letter 5. As to the parties' coverage dispute, Zurich argues that the
17  requested communications are "immaterial" to "interpretation of policy terms" and that "parol
18  evidence is inadmissible to contradict clear and explicit policy terms." *Id*. at 5, 6. Zurich also
19  argues that JFW "misapplies" the key case on which it relies, *Lipton*. *Id*. at 5, 6.
20     Contrary to Zurich's position, *Lipton* supports that communications between an insurer and
21  its reinsurers may be relevant and discoverable in a bad faith action. In *Lipton*, the insured sought
22  discovery of his insurer's reinsuring agreements along with "related correspondence regarding the
23  adjustment and defense" of the underlying cases which the insurer may have sent to its reinsurers.
24  48 Cal. App. 4th at 1616. The insured argued that such "reinsurance information" was "relevant
25  to explaining the definition of 'single' versus 'aggregate' claims," where the insured asserted that
26  he was entitled to aggregate claim coverage and suggested that the insurer sought reinsurance
27  based on its knowledge or belief that it might owe aggregate coverage benefits to the insured. *Id*.
28  at 1607-08, 1616. The court found that the argument was based on a misunderstanding of "the

4

1 fundamental purpose and function of reinsurance" because the insurer's "entry into reinsuring
2 agreements would not have occurred in response to the existence of a pending claim, but would
3 necessarily have occurred prior to the claim." *Id*. at 1616 (emphasis removed).  It determined that
4 reinsurance documents were not relevant to the issue of whether there was "single" or "aggregate"
5 coverage.  *Id*. at 1616-17.  However, the court clarified that it was *not* holding that "all documents
6 containing re-insurance information are irrelevant to the subject matter of the lawsuit and are not
7 calculated to lead to the discovery of admissible evidence."  It held that "correspondence between
8 the insurer and re-insurer, not otherwise privileged, which discusses liability, exposure, the
9 likelihood of a verdict in excess of policy limits or coverage issues may well be relevant in
10 discovery."  *Id*. at 1617-18.

11        Following *Lipton*, numerous cases in the Ninth Circuit have concluded that reinsurance
12 communications are relevant to issues such as the state of mind of an insurer regarding claim
13 valuation and the potential for coverage, whether the insurer conducted a proper investigation, and
14 the insurer's understanding of coverage issues.  *See, e.g., Scripps Health v. Nautilus Ins. Co.*, No.
15 21-CV-1634-AJB (WVG), 2022 WL 18781312, at *5 (S.D. Cal. Dec. 13, 2022) (concluding that
16 communications between insurer and re-insurers regarding plaintiff's claims for coverage were
17 relevant and discoverable because they "may reveal Defendant's candid evaluation of Plaintiff's
18 claim at different stages of the underlying litigation" and "could provide insight as to Defendant's
19 state of mind regarding the valuation of Plaintiff's claim, as well as information as to whether
20 Defendant conducted a proper investigation into Plaintiff's claim."); *Whispering Winds Catholic*
21 *Conf. Center, Inc. v. Markel Ins. Co*., No. 05-CV-1911-IED (JMA), 2006 WL 8455454, at *3
22 (S.D. Cal. Oct. 26, 2006) (holding that communications between insurer and reinsurer regarding
23 plaintiff's claim were relevant to the insurer's "state of mind regarding the valuation" of the claim
24 and whether the defendant "conducted a proper investigation" into the claim, and noting that
25 "information expressing an opinion or stating a position as to an insurer's interpretation of a policy
26 at issue could be relevant" (quotation marks and citation omitted)); *Northrop Grumman Corp. v.*
27 *Factory Mut. Ins. Co*., No. CV 05-8444-DDP (PLAx), 2007 WL 9627647, at *3 (C.D. Cal. Jan. 3,
28 2007) (holding that communications between insurer and reinsurer regarding policies issued to

plaintiff covering losses in dispute were relevant as they "may show defendant's understanding of the perils covered by the policy at issue" where the parties disputed an exclusion); *Hana Fin., Inc. v. Foremost Signature Ins. Co.*, No. CV 17-02770 RGK (JEMx), 2017 WL 8241977, at *1 (C.D. Cal. Nov. 22, 2017) ("[c]ase authority . . . supports the relevance of reinsurance documents in bad faith litigation"). Zurich does not meaningfully distinguish these cases and instead urges the court to follow *Flintkote Company v. General Accident Assurance Co. of Canada*, No. C 04-01827 MHP, 2009 WL 1457974, at *5 (N.D. Cal. May 26, 2009). In *Flintkote*, the court distinguished the case from *Lipton* and denied discovery of unspecified "reinsurance information" without prejudice to the plaintiff renewing the request if it could "show that the reinsurance agreements are in issue." *Id*. at *6. However, the court did not discuss the relevance of communications between an insurer and reinsurers to the insurer's state of mind or address *Lipton*'s holding that such communications may be relevant to a bad faith claim.

The court concludes that the requested communications are relevant to JFW's claims in this case, where it alleges that Zurich has unreasonably withheld benefits due under the insurance policies and that Zurich is liable for punitive damages due to oppression, fraud, or malice. Zurich's state of mind is therefore at issue, and its communications with reinsurers may be probative of its state of mind. Additionally, the requested communications may bear on the parties' coverage dispute. Contrary to Zurich's argument about the admissibility of parol evidence, information within the scope of Rule 26 "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

As noted, Zurich also argues that the requested communications contain "confidential financial and other information." Jt. Letter 6. However, it does not explain why the protective order in place is insufficient to address its confidentiality concerns. [*See* Docket No. 45.] Accordingly, "communications between Zurich and any reinsurer relating to JFW's four fire claims" are relevant and discoverable.

Zurich contends that it withheld responsive communications "according to privilege, . . . the confidentiality inherent to reinsurance, and others on grounds of both privilege and confidentiality" and indicated the same on its privilege log. Jt. Letter 6. Zurich shall produce any

responsive communications withheld solely on a reinsurance-based objection, including the claim of "confidentiality inherent to reinsurance," within seven days of the date of this order. This discovery may be produced pursuant to the protective order. By the same date, Zurich shall produce an amended privilege log in accordance with the undersigned's February 7, 2024 Notice of Reference and Order re: Discovery Procedures (Docket No. 58).

### IV. CONCLUSION

For the foregoing reasons, JFW's motion to compel is granted.

**IT IS SO ORDERED.**

Dated: July 8, 2024



Donna M. Ryu
Chief Magistrate Judge Ryu