UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKSON FAMILY WINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendant. | Case No. 22-cv-07842-AMO (DMR) <br><br> **ORDER ON DEFENDANT'S MOTION FOR A PROTECTIVE ORDER** <br><br> Re: Dkt. No. 84 |

The parties filed a joint discovery letter in which Defendant Zurich American Insurance Company ("Zurich") moves for a protective order to bar Plaintiff Jackson Family Wines, Inc. ("JFW") from deposing its employee, Jimmy Johnson, on the basis that he is a high-level official subject to protection under the apex doctrine. [Docket No. 84.] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion for a protective order is denied.

**I.   BACKGROUND**

This is a breach of insurance contract and bad faith action. JFW alleges that it purchased three insurance policies from Zurich that together provided $1.1 billion in coverage, and that it "suffered substantial property and other damage from four wildfires that occurred in the three different policy terms" in Northern California. It submitted four fire-related claims totaling over $430 million. JFW alleges that Zurich has deliberately delayed the four claims to "avoid paying tens of millions of dollars in coverage that is clearly owed" under the policies. Compl. ¶¶ 1, 2, 10, 11. JFW brings claims for breach of the three insurance agreements, breach of the implied covenant of good faith and fair dealing, and declaratory relief.

Jimmy Johnson is "head of Zurich's commercial property major claims unit." Jt. Letter 2.

Zurich seeks a protective order barring his deposition on the ground that he is a high-level executive subject to protection under the apex doctrine. JFW disputes that Johnson is an apex witness and opposes the motion for a protective order on the ground that Johnson has first-hand knowledge relevant to the action.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by prohibiting a deposition. Fed. R. Civ.P. 26(c); *see also Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. GMC,* 307 F.3d 1206, 1210–1211 (9th Cir. 2002).

"When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), courts have observed that such discovery creates a tremendous potential for abuse or harassment." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Accordingly, while the party seeking to avoid an apex deposition bears the burden of showing good cause for why the deposition should not be allowed, *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-cv-05634-CRB (DMR), 2014 WL 939287, at *2 (N.D. Cal. Mar. 6, 2014), the court has discretion to limit discovery "where the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Apple*, 282 F.R.D. at 263 (internal quotation marks and citation omitted).

Courts consider two factors when determining whether to permit an apex deposition. First, courts have granted depositions of high-ranking executives when they possess first-hand knowledge of "important, relevant, and material facts." *First United Methodist Church of San Jose v. Atl. Mut. Ins. Co.*, No. 95-cv-2243-DLJ, 1995 WL 566026, at *2 (N.D. Cal. Sept. 19, 1995) (citation omitted). Second, courts consider whether the party seeking the apex deposition has obtained the information sought through other discovery or less intrusive means. *See In re Transpacific Passenger*, 2014 WL 939287, at *5. "If it appears unlikely that [the apex witness] has percipient knowledge of material facts, or if there are other witnesses who could testify to

2

1   those facts from a similar vantage point, there is more reason to question whether the deposition is
2   being sought for abusive rather than appropriate fact-finding purposes." *Id.* at *3.

### III.   DISCUSSION

Zurich objects to Johnson's deposition, invoking the apex doctrine. Zurich contends that two Zurich claims adjusters, Cynthia Frank and Allan Holt, "primarily handled" JFW's claims, and that Frank and Holt "were in charge of making coverage and payment decisions." Jt. Letter 2. Franklin and Holt reported to Jeff Morrow, "who participated in the claim handling and reviewed substantive payment determinations," and Morrow reported to Johnson. *Id*. at 2-3. According to Zurich, "Johnson's involvement in this matter was limited to high-level financial oversight and he never participated in nor directed substantive coverage determinations regarding JFW's loss claims." *Id*. at 3. It argues that "[t]he fact that Mr. Johnson was not directly involved in this case and did not make coverage determinations is fatal to Plaintiff's request for his deposition." *Id*. (citations omitted). Zurich also notes that JFW has not yet deposed Holt and Morrow, and argues that at a minimum, the court should preclude Johnson's deposition until the other key witnesses have been deposed so that the parties can meet and confer "about what specific facts JFW believes remain solely known to Mr. Johnson." *Id*. at 4.

JFW disputes that the apex doctrine applies. It argues that even if it does, Johnson possesses relevant first-hand knowledge that is "critical" to the case and that it has exhausted other discovery alternatives. *Id*. at 5, 6. As a compromise, it offers to depose Johnson remotely for no more than five hours. *Id*. at 6.

The court concludes that Zurich has failed to show good cause for issuance of a protective order barring Johnson's deposition. As an initial matter, it is not clear that Johnson is a true "apex" witness. Zurich states only that Johnson is "head of Zurich's commercial property major claims unit," and that he is two levels above the claims handlers. Jt. Letter 2. It does not offer any other details about his role in the company or "degree of apex-ness," and JFW contends that Zurich has not produced "an organizational chart and/or any additional information that would show where" Johnson sits in Zurich's organizational structure. *Id*. at 5. *See, e.g., In re Apple Iphone Antitrust Litig.*, No. 11-cv-06714-YGR (TSH), 2021 WL 485709, at *4 (N.D. Cal. Jan. 26,

3

1    2021) (senior vice president positions are "important jobs that are high up in Apple's management
2    structure, but these witnesses are not a CEO or the head of an agency. Because of their lesser
3    degree of apex-ness, less is required to justify their depositions.").
4            In any event, assuming without deciding that the apex doctrine applies to Johnson, JFW
5    has shown that Johnson likely has first-hand knowledge of relevant facts. *See Grateful Dead*
6    *Prods. v. Sagan*, No. 06-cv-7727-JW (PVT), 2007 WL 2155693, at *1 n. 5 (N.D. Cal. July 26,
7    2007) ("[W]here a corporate officer may have *any* first hand knowledge of relevant facts, the
8    deposition should be allowed."). According to JFW, claims adjuster Frank testified at her
9    deposition that "she 'interacted directly' with Mr. Johnson 'with regards to changing reserves' and
10   would provide him an 'overall review of the claim.'" Jt. Letter 5. Franklin also testified that
11   Johnson attended a November 2020 meeting in which Franklin "recommended a range for
12   reserves" for one of JFW's claims, the Kincade Fire claim, and that she prepared a slide deck for
13   the meeting and sent it to Johnson in advance of the meeting. *Id*. at 5. JFW contends that
14   documents produced in discovery show that Johnson "frequently communicated with his
15   subordinates on the handling of JFW's fire claims and was involved with the decision-making on
16   those claims." *Id*. at 6. Additionally, Franklin testified that "Johnson did not have sufficient
17   authority to approve the recommended reserve" and that she does not know who ultimately
18   authorized the reserve. *Id*. at 5, 6. Accordingly, JFW argues, Johnson "has unique knowledge
19   about the effort to obtain approval for the reserve for JFW's Kincade Fire claim and the process by
20   which Zurich decided what to pay and when to make the payments, and the reasons for those
21   critical decisions." *Id*. at 6.
22           Additionally, there is no indication that JFW seeks Johnson's deposition "for abusive
23   rather than appropriate fact-finding purposes." *See In re Transpacific Passenger*, 2014 WL
24   939287, at *3. JFW has served two sets of interrogatories and one set of requests for admission
25   and has deposed Franklin. It also served notices for the depositions of Holt and Morrow in May
26   2024, and it appears that those depositions will go forward this month, prior to the July 17, 2024
27   discovery cutoff date. Jt. Letter 6. Given the timing, Zurich's offer to meet and confer about the
28   need for Johnson's deposition following the depositions of Holt, Morrow, and "other key

4

witnesses" is unworkable.

Accordingly, the court denies Zurich's motion for a protective order. Zurich shall produce Johnson for a deposition on a mutually agreeable date prior to the close of fact discovery.

## IV. CONCLUSION

For the foregoing reasons, Zurich's motion for a protective order is denied.

**IT IS SO ORDERED.**

Dated: July 8, 2024



IT IS SO ORDERED
Donna M. Ryu
Chief Magistrate Judge
Judge Donna M. Ryu