UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKSON FAMILY WINES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendant. | Case No. 22-cv-07842-AMO (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER RE: PLAINTIFF'S MOTION TO COMPEL**<br><br>Re: Dkt. No. 90 |

The parties filed a joint discovery letter in which Plaintiff Jackson Family Wines, Inc. ("JFW") moves to compel Defendant Zurich American Insurance Company ("Zurich") to produce documents in response to one request for production ("RFP") and to produce a Rule 30(b)(6) witness to testify about three related topics. [Docket No. 90.] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion to compel is granted.

## I. BACKGROUND

This is an action for bad faith breach of insurance contracts. JFW is "a family owned-business that owns and operates dozens of vineyards and wineries throughout California." It alleges that it purchased three insurance policies from Zurich that together provided $1.1 billion in coverage. According to JFW, it "suffered substantial property and other damage from four wildfires that occurred in the three different policy terms" and submitted four fire-related claims totaling over $430 million. JFW alleges that Zurich has deliberately delayed the four claims to "avoid paying tens of millions of dollars in coverage that is clearly owed" under the policies. Compl. ¶¶ 1, 2, 10, 11. JFW brings claims for breach of the three insurance policies, breach of the

implied covenant of good faith and fair dealing, and declaratory relief.

JFW moves to compel Zurich to respond to RFP No. 41, which requests "[a]ll documents discussing or referring to your subrogation rights in relation to any of the claims." Jt. Letter Ex. A. It also asks the court to compel Zurich to provide a Federal Rule of Civil Procedure 30(b)(6) witness on Topic Nos. 24-26, which seek testimony about Zurich's subrogation claims and any recovery. Jt. Letter 1.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "While the party seeking to compel discovery has the burden of establishing that its request satisfies relevancy requirements, the party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015) (citing *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012)).

## III.    DISCUSSION

PG&E was responsible for three of the four wildfires that resulted in JFW's losses at issue in this action. JFW recently discovered that Zurich asserted subrogation[1] claims against PG&E and the PG&E Subrogation Wildfire Trust ("SWT") "to recover some or all of the payments it

---

[1] "Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim." *Ace Am. Ins. Co. v. Fireman's Fund Ins. Co.*, 2 Cal. App. 5th 159, 167 (2016) (quotation omitted).

1  made to JFW for those three fires" and that Zurich obtained recovery for at least two of the
2  wildfires. However, Zurich redacted documents to remove information about the subrogation
3  amounts it recovered and the dates they were paid. Jt. Letter 1-2. JFW now seeks discovery about
4  those subrogation claims.

### A.     RFP No. 41

RFP No. 41 requests "[a]ll documents discussing or referring to your subrogation rights in relation to any of the claims." Zurich raises two objections: 1) that JFW is "backtracking" on a prior June 2023 discovery compromise; and 2) that subrogation information is irrelevant to JFW's claims. *Id*. at 3-4. Zurich also asserts that the requested information is "otherwise protected by confidentiality and privilege." *Id*. at 4.

With respect to the first argument, Zurich says the parties reached an agreement last year that Zurich did not have to respond to discovery regarding its subrogation efforts with PG&E, in which JFW agreed it was "seeking Zurich's communications 'with PG&E about the extent of JFW's losses.'" *Id*. at 3. Zurich contends that it "relied on JFW's apparent acceptance of this compromise, produced documents relying on this compromise, and were [sic] surprised when JFW [recently] renewed meet and confer discussions." Zurich asks the court "to enforce the compromise limiting production 'to the extent of JFW's losses.'" *Id*.

JFW disputes that it agreed to exclude discovery of PG&E subrogation information. JFW says that the agreement to which Zurich refers was a compromise regarding a different document request seeking Zurich's communications with PG&E. According to JFW, "[a]fter extensive meet-and-confer, Zurich agreed to produce responsive and unprivileged communications with PG&E 'about the extent of JFW's losses.'" *Id*. at 2. JFW asserts that "Zurich never stated that this meant it would not produce subrogation information related to 'the extent of JFW's losses.'" *Id*. (emphasis removed).

The parties fundamentally disagree about whether their previous agreement was intended to include subrogation information, which distinguishes this case from *Paul v. PG&E Corp.*, No. C 09-4751 RS (JSC), 2011 WL 13376925, at *1-2 (N.D. Cal. July 20, 2011), cited by Zurich. In *Paul*, the parties twice memorialized in writing the defendant's agreement to produce a mirror

3

1 image of the plaintiff's former hard drive and the defendant subsequently refused to do so. The
2 court ordered the defendant to produce the hard drive in its entirety, noting "[i]f the meet and
3 confer process is to have any meaning, then parties must adhere to representations made during the
4 process and agreements reached as a result of the process." *Id*. at *2. Here, the parties dispute
5 whether the scope of their earlier compromise includes the discovery currently at issue. As
6 described by the parties, the terms of the agreement do not clearly support either side, raising
7 doubt about whether they had a meeting of the minds on this point. Adding to that doubt is the
8 fact that the parties reached the agreement in June 2023 but JFW apparently learned about
9 Zurich's subrogation recoveries during a May 2024 deposition. *See* Jt. Letter 1. Under these
10 circumstances, the court declines to enforce Zurich's one-sided interpretation of the parties' earlier
11 agreement. In any event, even under Zurich's interpretation, documents regarding "the extent of
12 JFW's losses" arguably do not exclude the subrogation information requested by RFP No. 41.
13       Next, JFW argues that the subrogation information is relevant to its claims because the
14 policies provide that "[a]ny recovery from subrogation proceedings, less costs incurred by
15 [Zurich] in such proceedings, will be payable to the Insured in the proportion that the amount of
16 any applicable deductible and/or any provable uninsured loss, bears to the entire provable
17 amount." Jt. Letter 1 (citation omitted) (emphasis removed). JFW contends that it has "millions
18 of dollars in losses that Zurich contends are uninsured, so Zurich must pay JFW a proportional
19 share of any subrogation recovery." *Id*. According to JFW, Zurich's failure to pay JFW a share of
20 subrogation recovery would breach the insurance contracts and also amount to bad faith. *Id*.
21 (citing *Whittaker Corp. v. AIG Spec. Ins. Co.*, No. 2:18-cv-08453-AB-PLA, 2019 WL 13075952,
22 at *4-5 (C.D. Cal. July 2, 2019) (holding insured stated claims for breach of contract and bad faith
23 against insurer where it alleged insurer failed to pay sums due under policy's subrogation
24 provision)).
25       Zurich responds that subrogation is not relevant to JFW's claims because "it is either
26 unrecoverable by JFW" or "wholly premature." Jt. Letter 4. As to the "unrecoverable" argument,
27 Zurich disputes that JFW is entitled to any subrogation recovery because Zurich has already paid
28 JFW $70 million for its losses and "JFW was not charged and did not pay a deductible for its

4

1   claims related to any of [the] fires." Jt. Letter 4 (emphasis removed) (citing Cal. Code Regs. tit.
2   10, § 2695.7(q) ("[e]very insurer shall share subrogation recoveries on a proportionate basis with
3   the first party claimant, unless the first party claimant has otherwise recovered the whole
4   deductible amount.")). As to the second argument, Zurich contends that "the Policies require any
5   other losses claimed by JFW be 'provable,'" which is "hotly-disputed" in this litigation. *Id*. Thus,
6   Zurich argues, the issue of subrogation is premature. *Id*.
7         Both arguments go to the merits of JFW's claims. They do not defeat relevance for
8   purposes of discovery under Rule 26. Information about Zurich's subrogation rights related to
9   JFW's losses is relevant to the breach of contract and bad faith claims because JFW contends that
10  Zurich must pay a portion of its subrogation recoveries to JFW under the terms of the policies.
11  While Zurich disputes that it wrongfully denied coverage and refused to pay for JFW's losses,
12  JFW is entitled to obtain discovery that bears on its claims. *See, e.g., City of Capitola v.*
13  *Lexington Ins. Co.*, No. 12-3428 LHK (PSG), 2013 WL 12144123, at *1 (N.D. Cal. Jan. 23, 2013)
14  (granting motion to compel subrogation information related to insurance policy where plaintiff
15  argued that "subrogation information may shed light on [insurer's] investigation and whether the
16  denial of the claim was in bad faith."); *see also Energy Mgmt. Collab., LLC v. Darwin Tech LLC*,
17  No. 8:22-CV-00952 JWH (ADS), 2024 WL 2335629, at *6 (C.D. Cal. Apr. 25, 2024) (defendant
18  "confuses its obligations under the Contract with its obligations in discovery . . . [plaintiff] has no
19  way of testing its claim and [defendant's] assertions without evaluating these materials.").[2]
20  Moreover, Zurich's contention that the complaint does not "plead any acts of bad faith relating to
21  subrogation" is not persuasive; "discovery is not limited to issues raised by the pleadings, for
22  discovery itself is designed to help define and clarify the issues." *Bayside Sols., Inc. v. Avila*, No.

---

[2] The cases Zurich cites in support of its position do not support a different outcome. *See* Jt. Letter at 5. In *Seacoast 5151 Condo. Ass'n v. Great Am. Ins. Co. of New York*, No. 17-23820-CIV, 2018 WL 6653342, at *5 (S.D. Fla. Sept. 21, 2018), *report and recommendation adopted,* No. 17-23820-CIV, 2018 WL 6653071 (S.D. Fla. Nov. 6, 2018), the plaintiff did not allege that it was entitled to share in its insurer's subrogation recoveries and did not have a bad faith claim; the court denied discovery related to subrogation on the ground that "there are no subrogation issues raised in this single-count breach of contract case." In *Luxury Limousine, Inc. v. Nat'l Indem. Co.*, No. CV 19-10893, 2020 WL 8459159, at *2 (E.D. Mich. Dec. 2, 2020), the court's discussion of the relevance of subrogation-related documents is very brief and does not include details about the plaintiff's claims.

5

21-CV-08738-PJH, 2023 WL 4265687, at *2 (N.D. Cal. June 28, 2023) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Finally, Zurich argues that the requested information "is governed by a separate confidentiality agreement" under which PG&E has the right to object or oppose the disclosure of its own information. It contends that it cannot disclose the information without PG&E's consent. Jt. Letter 5. However, it does not identify or describe the relevant terms of the agreement or otherwise explain this argument further. In the absence of details about Zurich's confidentiality obligations, the court finds that the protective order issued in this case adequately addresses any concerns about confidentiality of the requested information. [*See* Docket No. 45.]

The parties also appear to dispute whether Zurich may redact privileged information from the documents. They did not brief this issue in any detail. *See* Jt. Letter 3, 5. Zurich shall produce all documents responsive to RFP No. 41 within seven days of the date of this order. If it withholds any documents or information based on the attorney-client privilege or the work product doctrine, Zurich shall also produce an updated amended privilege log in accordance with the undersigned's February 7, 2024 Notice of Reference and Order re: Discovery Procedures (Docket No. 58) at the same time as its document production.

**B.     Deposition Topic Nos. 24-26**

JFW also moves to compel production of a Rule 30(b)(6) witness to testify on three subrogation-related topics, Nos. 24-26. Zurich's only argument regarding the disputed topics is that the request is "premature"; it asserts that JFW should proceed with the deposition and that "[t]o the extent any disputes arise during the deposition with regard to specific questions or topics, the parties can meet and confer at that time." Jt. Letter 5. As the court has now ruled that information about Zurich's subrogation recoveries related to JFW's losses is relevant and discoverable, the court expects that there will be few, if any, disputes about specific questions related to subrogation. The Rule 30(b)(6) deposition shall proceed forthwith.

//

//

## IV. CONCLUSION

For the foregoing reasons, JFW's motion to compel is granted.

**IT IS SO ORDERED.**

Dated: August 12, 2024



Donna M. Ryu
Chief Magistrate Judge
Judge Donna M. Ryu